Opinions of the Colorado Supreme Court are available to the
public and can be accessed through the Judicial Branch's homepage at
http://www.courts.state.co.us.  Opinions are also posted on the
Colorado Bar Association's homepage at http://www.cobar.org.

ADVANCE SHEET HEADNOTE
June 3, 2019

**2019 CO 44**

**No. 15SC1095, *McCoy v. People*—Sufficiency of the Evidence—Standard of Review—Statutory Construction—Unlawful Sexual Contact.**

This case principally requires the court to determine the appropriate standard of review for unpreserved claims of insufficient evidence and to apply that standard to decide whether legally sufficient evidence supported the defendant's convictions here.

The court initially concludes that sufficiency of the evidence claims may be raised for the first time on appeal and are not subject to plain error review. Accordingly, appellate courts should review unpreserved insufficiency claims de novo (i.e., in the same manner as if the claims were preserved), and not under a plain error standard of review. Such a rule is consistent with Colorado's criminal procedure rules, long-standing precedent, and the nature of sufficiency claims, including the settled principle that a conviction that is based on legally insufficient evidence cannot stand.

Turning then to the merits of the defendant's sufficiency claims, the court begins by construing section 18-3-404(1)(g), C.R.S. (2018), which bars sexual contact committed during treatment or examination for other than bona fide medical purposes or in a

manner substantially inconsistent with reasonable medical practices. After determining that this provision is ambiguous, the court employs settled tools of statutory construction and concludes that the provision applies to a doctor or other individual who is, or holds himself or herself out to be, a health treatment provider of any kind, and who knowingly subjects the victim to sexual contact while examining, treating, or purporting to examine or treat the victim for other than a bona fide medical purpose or in a manner substantially inconsistent with reasonable medical practices.

Finally, applying this construction here, the court concludes that the provision is neither facially overbroad nor unconstitutionally vague and that the prosecution presented sufficient evidence to support the defendant's convictions.

Accordingly, the court affirms the division's judgment, although its reasoning differs in some respects from that of the division majority.

## The Supreme Court of the State of Colorado
2 East 14th Avenue • Denver, Colorado 80203

---

### 2019 CO 44

---

### Supreme Court Case No. 15SC1095
*Certiorari to the Colorado Court of Appeals*
Court of Appeals Case No. 11CA1795

---

### Petitioner:

David Lewis McCoy,

v.

### Respondent:

The People of the State of Colorado.

---

### Judgment Affirmed
*en banc*
June 3, 2019

---

**Attorneys for Petitioner:**
Megan A. Ring, Public Defender
Jon W. Grevillius, Deputy Public Defender
  *Denver, Colorado*

**Attorneys for Respondent:**
Philip J. Weiser, Attorney General
Melissa D. Allen, Senior Assistant Attorney General
  *Denver, Colorado*

**JUSTICE GABRIEL** delivered the Opinion of the Court.
**JUSTICE SAMOUR** concurs in the judgment only, and **CHIEF JUSTICE COATS** and **JUSTICE BOATRIGHT** join in the concurrence in the judgment only.

¶1 We granted certiorari to review the court of appeals division's decision affirming David McCoy's convictions for two counts of unlawful sexual contact while engaged in the treatment or examination of a victim for other than bona fide medical purposes, a class four felony. *People v. McCoy*, 2015 COA 76M, __ P.3d __. This case principally requires us to determine the appropriate standard of review for unpreserved claims of insufficient evidence and to apply that standard to decide whether legally sufficient evidence supported McCoy's convictions here.[1]

¶2 We initially conclude, as did the majority below, that sufficiency of the evidence claims may be raised for the first time on appeal and are not subject to plain error review. Accordingly, appellate courts should review unpreserved insufficiency claims de novo (i.e., in the same manner as if the claims were preserved), and not under a plain error standard of review. Such a rule is consistent with our criminal procedure rules,

---

[1] Specifically, we granted certiorari to review the following issues:

1. Whether the court of appeals erred in concluding section 18-3-404(1)(g), C.R.S. (2016), is not limited to conduct that occurs within a physician-patient relationship or during a medical treatment or medical examination.

2. Whether the court of appeals' interpretation of section 18-3-404(1)(g) renders the statute unconstitutionally overbroad.

3. Whether the court of appeals' interpretation of section 18-3-404(1)(g) renders the statute unconstitutionally vague.

4. Whether the court of appeals correctly concluded that sufficiency of the evidence claims are not subject to plain error review.

5. Whether the court of appeals erred in concluding that the prosecution presented sufficient evidence to sustain the defendant's two convictions under section 18-3-404(1)(g).

long-standing precedent, and the nature of sufficiency claims, including the settled principle that a conviction that is based on legally insufficient evidence cannot stand.

¶3 Turning then to the merits of McCoy's sufficiency claims, we begin by construing section 18-3-404(1)(g), C.R.S. (2018), which bars sexual contact committed during treatment or examination for other than bona fide medical purposes or in a manner substantially inconsistent with reasonable medical practices. After determining that this provision is ambiguous, we employ settled tools of statutory construction and conclude that the provision applies to a doctor or other individual who is, or holds himself or herself out to be, a health treatment provider of any kind, and who knowingly subjects the victim to sexual contact while examining, treating, or purporting to examine or treat the victim for other than a bona fide medical purpose or in a manner substantially inconsistent with reasonable medical practices.

¶4 Finally, applying this construction here, we conclude that the provision is neither facially overbroad nor unconstitutionally vague and that the prosecution presented sufficient evidence to support McCoy's convictions.

¶5 Accordingly, we affirm the division's judgment, although our reasoning differs in some respects from that of the division majority.

## I. Facts and Procedural Background

¶6 The charges at issue stemmed from McCoy's interactions with two young men, P.K. and G.M., who met with McCoy believing that they were interviewing and training for possible jobs with him.

3

¶7 When the young men first met McCoy, P.K. was in his mid-twenties, G.M. was in his late teens or early twenties, and both had other jobs. McCoy told them that he worked in the television or film and broadcast industry, and he gave each of them a business card, telling at least P.K. that if he had any interest in working for McCoy, he should call. Each of the young men eventually contacted McCoy about the possibility of a job with his purported company, and McCoy subsequently had them come to his apartment for what he represented would be job interviews and initial training.

¶8 When McCoy arrived at his apartment with each of the young men, he took and held onto their identification papers and began a lengthy "interview" process. McCoy's questions ultimately became personal, including questions about the young men's prior relationships and their sexual experiences and fantasies.

¶9 At some point during each of these meetings, McCoy told the young men that he needed to conduct a physical examination of them, allegedly to make sure that they were physically fit and able to do the supposed job. Before and during these physical examinations, McCoy told the men that he had been trained in a medical field, although the details of what he said differed in some respects (e.g., he apparently said, at different times, that he was a physician, a pediatrician, and a Harvard-trained psychologist). These physical examinations eventually became sexual in nature, and McCoy had the men remove parts of their clothing; took their pulses in their groin areas; touched, moved, or examined their genitals or the area right next to their genitals; and touched their buttocks.

¶10 The police became involved in 2009, when P.K. contacted them following his encounter with McCoy. The prosecution subsequently charged McCoy with, as pertinent

4

here, two counts of unlawful sexual contact, based on the above-described conduct involving P.K. and G.M. The case ultimately proceeded to trial, and a jury convicted McCoy as charged.

¶11 McCoy then appealed, arguing that section 18-3-404(1)(g) proscribes only conduct occurring in a physician-patient relationship and as part of a medical examination or medical treatment. *McCoy*, ¶ 1. Applying this interpretation, he contended that because he was not a physician, the prosecution had presented insufficient evidence to sustain his convictions. *Id.*

¶12 The People responded by first contending that because McCoy had not preserved his sufficiency claim, the division should consider the issue only for plain error. The People then contended that under this plain error standard, McCoy's conviction should be upheld.

¶13 In a split published opinion, the division affirmed. *Id.* Rejecting the People's argument regarding the standard of review, the division first concluded that appellate courts review claims of insufficient evidence de novo, even if the defendant did not raise such claims at trial. *Id.* at ¶¶ 6–37. Proceeding then to interpret section 18-3-404(1)(g) in light of this standard, the division concluded that the provision unambiguously applied to someone in McCoy's position because the statutory language did not restrict the provision's application to medical professionals or those claiming to be medical professionals but rather applied to "any actor." *Id.* at ¶¶ 41, 45. The division thus concluded that the prosecution had presented sufficient evidence to sustain McCoy's convictions. *Id.* at ¶ 47.

¶14 Judge Webb specially concurred, disagreeing with the majority on the question of the standard of review to be applied to an unpreserved sufficiency claim. *Id.* at ¶¶ 81, 88–89 (Webb, J., specially concurring). In his view, the plain error standard should apply to unpreserved sufficiency claims, although he opined that review under that standard would lead to a different result from de novo review only when (1) a threshold question of statutory interpretation must be answered before the sufficiency of the evidence can be determined, (2) this question was created solely by appellate counsel, and (3) the issue fails the obviousness requirement of plain error analysis because the statute does not include common terms or its language has never been interpreted. *Id.* at ¶ 70. In Judge Webb's view, only in this circumstance, which he predicted would rarely arise, could an appellate court begin its analysis with obviousness rather than sufficiency. *Id.* Applying this analysis, Judge Webb opined that McCoy had not met the obviousness prong of the plain error standard, and, thus, he would have affirmed McCoy's convictions without reaching the merits of McCoy's sufficiency challenge. *Id.* at ¶¶ 105–07.

¶15 McCoy then petitioned this court for certiorari review, and we granted his petition.

## II. Analysis

¶16 We begin by discussing the appropriate standard of review to be used by appellate courts when considering unpreserved sufficiency of the evidence claims. We conclude that sufficiency of the evidence claims may be raised for the first time on appeal and are not subject to plain error review. Accordingly, appellate courts should review unpreserved sufficiency claims de novo (i.e., in the same manner as if the claims were preserved). We next proceed to conduct that review in this case. This review requires us

6

first to determine the scope of section 18-3-404(1)(g) and specifically whether it (1) proscribes conduct only within the context of the physician-patient relationship, as McCoy contends; (2) covers the conduct of other treatment providers and individuals who falsely hold themselves out to be doctors or treatment providers; or (3) covers conduct by any actor, as the People assert and the division below determined. We conclude that the statute covers doctors, other treatment providers, and those holding themselves out to be doctors or healers. Based on this interpretation, we address McCoy's contentions that the statute is facially overbroad and unconstitutionally vague, and we reject both arguments. Finally, we consider whether the prosecution presented sufficient evidence to support McCoy's unlawful sexual contact convictions, and we conclude that it did.

## A. Standard of Review

¶17 For many years, divisions of the court of appeals had consistently concluded that appellate courts review sufficiency of the evidence claims de novo, regardless of whether the defendant preserved the sufficiency claim by way of a motion for judgment of acquittal or a motion for a new trial. *See, e.g.*, *People v. Randell*, 2012 COA 108, ¶¶ 29–30, 297 P.3d 989, 997–98 ("We review de novo whether the evidence is sufficient to support a conviction. A defendant may challenge the sufficiency of the evidence on appeal without moving for a judgment of acquittal in the trial court."); *People v. Gregg*, 298 P.3d 983, 987 (Colo. App. 2011) ("We review de novo whether sufficient evidence supports a verdict."); *People v. Gibson*, 203 P.3d 571, 575 (Colo. App. 2008) (same).

7

¶18     Beginning with *People v. Lacallo*, 2014 COA 78, ¶ 24, 338 P.3d 442, 449, however, divisions have divided over the proper standard of review to be applied to a defendant's unpreserved sufficiency claim. *Compare, e.g., People v. Johnson*, 2017 COA 11, ¶ 11, __ P.3d __ (concluding that plain error analysis does not apply to unpreserved sufficiency claims premised on a question of law), *and People v. Sandoval*, 2016 COA 14, ¶ 30, 409 P.3d 425, 429 (concluding that sufficiency claims are not governed by plain error review), *with People v. Heywood*, 2014 COA 99, ¶ 9, 357 P.3d 201, 205 (concluding that unpreserved sufficiency claims will be reversed only for plain error), *and Lacallo*, ¶ 24, 338 P.3d at 449 (same).

¶19     For a number of reasons, we now conclude that sufficiency claims may be raised for the first time on appeal and are not subject to plain error review, and therefore, appellate courts should review unpreserved sufficiency claims de novo (i.e., in the same manner as if the claims were preserved).

¶20     First, "the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970). When a defendant challenges the sufficiency of the evidence, he or she is asserting that the prosecution has not proven every fact necessary to establish the crime at issue, and thus, it has not established that the defendant, in fact, committed a crime. Appellate review of such a claim thus serves to protect an essential component of due process, namely, that "no person shall be made to suffer the onus of a criminal conviction except upon sufficient proof," *Jackson v. Virginia*, 443 U.S. 307, 316 (1979), and we do not believe that plain error

8

review could, consistent with due process, result in the affirmance of a conviction that was unsupported by legally sufficient evidence.

¶21 Second, requiring a defendant to preserve a sufficiency of the evidence claim, either by way of a motion for judgment of acquittal or a motion for a new trial, is inconsistent with our rules of criminal procedure. Nothing in those rules requires a criminal defendant to file a motion for a judgment of acquittal in order to preserve an issue for appellate review, and we perceive a challenge to the prosecution's *completed* evidence to be different in kind from trial errors (e.g., in the admission of evidence or in jury instructions), which allow a court to avoid an error before it occurs. Nor do the rules require a defendant to file a motion for a new trial to preserve a sufficiency claim for appellate review. To the contrary, Crim. P. 33(a) provides that a party claiming error in the trial of a case "need not raise all the issues it intends to raise on appeal in [a motion for a new trial] to preserve them for appellate review."

¶22 Third, a defendant effectively challenges the sufficiency of the evidence presented at trial by contesting that evidence at the trial, and we perceive no purpose in requiring a party to pursue some other form of objection directed to the evidence as a whole. *See People v. McCullough*, 298 P.3d 860, 865 (Cal. 2013) ("Parties may generally challenge the sufficiency of the evidence to support a judgment for the first time on appeal because they 'necessarily objected' to the sufficiency of the evidence by 'contesting [it] at trial.'") (quoting *People v. Gibson*, 33 Cal. Rptr. 2d 217, 218 (Cal. Ct. App. 1994)).

¶23 Fourth, in our view, principles of stare decisis support de novo review here. To the extent that this court has previously discussed the issue presented here, we have

9

consistently opined or at least suggested that preservation is *not* required. *See, e.g.*, *Morse v. People*, 452 P.2d 3, 5 (Colo. 1969) (noting that the court could adequately review a sufficiency of the evidence claim based on the record before it even though the issue had not been raised in the trial court); *see also People v. Roggow*, 2013 CO 70, ¶ 13, 318 P.3d 446, 450 (stating, without discussing whether the sufficiency claim at issue had been preserved, that the court reviews questions relating to the sufficiency of the evidence de novo); *Clark v. People*, 232 P.3d 1287, 1291 (Colo. 2010) (same).

¶24     Likewise, as noted above, prior to *Lacallo*, divisions of our court of appeals consistently concluded that sufficiency of the evidence claims could be raised for the first time on appeal and were not subject to plain error review, but rather would be reviewed de novo, in the same manner as if the claims had been preserved.  Numerous out-of-state authorities have long reached the same conclusion. *See, e.g.*, *McCullough*, 298 P.3d at 865 (noting that parties may generally challenge the sufficiency of the evidence for the first time on appeal); *State v. Lewis*, 36 A.3d 670, 675 n.4 (Conn. 2012) (observing that an unpreserved sufficiency claim would be reviewed in the same manner as any properly preserved claim because a defendant found guilty on the basis of insufficient evidence has been deprived of a constitutional right); *Darst v. State*, 746 S.E.2d 865, 870 n.8 (Ga. Ct. App. 2013) ("Because due process requires the existence of sufficient evidence as to every element of the crime of which a defendant is convicted, the fact that this issue was not explicitly raised does not prevent us from addressing (nor, more importantly, does it justify a refusal to address) the issue at this juncture.") (citation omitted); *State v. Wright*, 295 P.3d 1016, 1017 n.1 (Idaho Ct. App. 2013) (noting that "sufficiency of the evidence

10

may be raised for the first time on appeal"); *People v. Space*, 103 N.E.3d 1019, 1027–28 (Ill. App. Ct. 2018) (rejecting the state's argument that the defendant had forfeited his sufficiency of the evidence claim by not raising it by objection or in a post-trial motion, and stating that the claim may be raised for the first time on direct appeal); *Baker v. State*, 967 N.E.2d 1037, 1043 (Ind. Ct. App. 2012) (noting that the defendant was not required to object at trial in order to preserve an appellate argument that the evidence was insufficient to support an element of the offense or sustain the defendant's conviction); *State v. Foster*, 312 P.3d 364, 368 (Kan. 2013) (observing that review of sufficiency questions does not require the court to engage in a "preservation inquiry"); *Commonwealth v. Garrett*, 41 N.E.3d 28, 31 (Mass. 2015) (reviewing a sufficiency claim for the first time on appeal because a conviction based on legally insufficient evidence is inherently serious enough to create a substantial risk of a miscarriage of justice); *People v. Williams*, 811 N.W.2d 88, 93 (Mich. Ct. App. 2011) ("A defendant need not take any action to preserve a challenge to the sufficiency of the evidence."); *State v. Litzau*, 893 N.W.2d 405, 409 (Minn. Ct. App. 2017) (reviewing an unpreserved sufficiency claim that was premised on an issue of statutory construction because the interests of justice required such review, given that, "[i]f appellant's conduct is not criminal under the statute pursuant to which he is charged, then we cannot properly affirm the conviction on forfeiture grounds"); *State v. Sutton*, 419 P.3d 1201, 1205 n.3 (Mont. 2018) ("[S]ufficiency of the evidence may be challenged on appeal even if the issue is not raised by the defendant at trial."); *State v. Scott*, 185 P.3d 1081, 1083 (N.M. Ct. App. 2008) ("[I]f the evidence is insufficient to legally sustain one of the elements of a crime, the error is

11

fundamental and may be raised for the first time on appeal."); *State v. Electroplating, Inc.*, 990 S.W.2d 211, 220 (Tenn. Crim. App. 1998) ("[N]othing in the rules requires the defendant to raise the sufficiency of the evidence either in a motion for judgment of acquittal or in the motion for new trial in order to preserve the issue for appellate review."), *abrogated in part on other grounds by State v. King*, No. M2012-00236-CCA-R3-CD, 2013 WL 793588, at *7 (Tenn. Crim. App. Mar. 4, 2013), *aff'd*, 432 S.W.3d 316 (Tenn. 2014); *Prichard v. State*, 533 S.W.3d 315, 320 (Tex. Crim. App. 2017) ("[B]ecause a legal-sufficiency challenge need not be preserved by objection in a trial court, appellant was permitted to present that complaint in the first instance to the court of appeals."); *State v. Cardenas-Flores*, 374 P.3d 1217, 1224 (Wash. Ct. App. 2016) ("[I]t is well established that a claim of insufficient evidence in support of a conviction is an issue of constitutional magnitude that an appellant may raise . . . for the first time on appeal."), *aff'd*, 401 P.3d 19 (Wash. 2017); *Haskell v. State*, 422 P.3d 955, 963 (Wyo. 2018) (noting that the court does not apply waiver to a claim that the evidence was legally insufficient to support the defendant's conviction because the proposition that a defendant's guilt must be established by competent evidence proving each element of the crime at issue invokes a fundamental right).

¶25 And even jurisdictions that purport to review unpreserved sufficiency claims for plain error have routinely concluded that convictions based on legally insufficient evidence necessarily constitute plain error. *See, e.g.*, *State v. Rhome*, 333 P.3d 786, 787 (Ariz. Ct. App. 2014) ("Fundamental error therefore occurs when a person is convicted of 'a crime when the evidence does not support a conviction.'") (quoting *State v. Stroud*,

12

103 P.3d 912, 914 n.2 (Ariz. 2005)); *State v. Puaoi*, 891 P.2d 272, 278 (Haw. 1995) ("A conviction based on insufficient evidence of any element of the offense charged is a violation of due process and thus constitutes plain error."); *State v. Drake*, 514 S.W.3d 633, 636 (Mo. Ct. App. 2017) ("If the evidence is insufficient to sustain a conviction, plain error affecting substantial rights is involved from which manifest injustice must have resulted.") (quoting *State v. Whalen*, 49 S.W.3d 181, 184 (Mo. 2001)); *State v. Sepulveda*, 71 N.E.3d 1240, 1243 (Ohio Ct. App. 2016) ("'[W]hether a sufficiency of the evidence argument is reviewed under a prejudicial error standard or under a plain error standard is academic.' Regardless of the standard used, 'a conviction based on legally insufficient evidence constitutes a denial of due process,' and constitutes a manifest injustice.") (quoting *City of Perrysburg v. Miller*, 795 N.E.2d 690, 700 (Ohio Ct. App. 2003), and *State v. Thompkins*, 678 N.E.2d 541, 546 (Ohio 1997)).

¶26    Finally, we see no basis to require preservation in a case in which a question of statutory interpretation must be resolved before a defendant's claim of insufficient evidence can be decided. Whether or not the matter involves an issue of statutory interpretation, a case raising a sufficiency of the evidence challenge ultimately requires a court to decide whether the defendant committed any crime at all. Thus,

> [a]n appellate court properly considers issues of statutory construction not raised to the district court in cases where statutory construction is essential to evaluating whether the evidence is sufficient to support a conviction. Even though appellant failed to raise this statutory-construction argument to the district court, we address the argument on its merits because it raises a sufficiency-of-the-evidence question, and the interests of justice require us to address it. If appellant's conduct is not criminal under the statute pursuant to which he is charged, then we cannot properly affirm the conviction on forfeiture grounds.

13

*Litzau*, 893 N.W.2d at 409; *see also Wright*, 295 P.3d at 1017–19 (addressing an unpreserved sufficiency claim and concluding that the prosecution presented insufficient evidence to support the defendant's conviction pursuant to the correct interpretation of the statute at issue, which interpretation the defendant proffered for the first time on appeal).

¶27     For all of these reasons, we conclude that sufficiency of the evidence claims may be raised for the first time on appeal and are not subject to plain error review. Accordingly, appellate courts should review unpreserved sufficiency claims de novo (i.e., in the same manner as if the claims were preserved), including when such claims involve preliminary questions of statutory construction.

¶28     In reaching this conclusion, we are unpersuaded by the People's contention that preservation should be required at least in cases in which an unpreserved sufficiency claim turns on a question of statutory interpretation because requiring preservation in those circumstances would avoid unfair surprise to the prosecution. "Prosecutorial discretion to bring or not bring charges is extraordinarily wide," *People v. Weiss*, 133 P.3d 1180, 1189 (Colo. 2006), and we perceive no unfairness in requiring prosecutors to know the elements of the crime that they choose to charge and to determine whether or not they can prove those elements beyond a reasonable doubt, *see* Standards for Criminal Justice, Std. 3-4.3 (Am. Bar Ass'n, 2015) ("A prosecutor should seek or file criminal charges only if the prosecutor reasonably believes that the charges are supported by probable cause, that admissible evidence will be sufficient to support conviction beyond a reasonable doubt, and that the decision to charge is in the interests of justice.").

¶29     Nor are we persuaded by the People's contentions that adopting a plain error standard here would (1) give trial courts the opportunity to correct the errors at trial and would ensure a just outcome and promote judicial efficiency; (2) give notice to the parties and trial courts that while their recollections are freshest, they need to make a complete record for purposes of appellate review; (3) provide an opportunity for trial courts to consider the issue, make any necessary findings, and offer an opinion on how it should be resolved from the perspective of a trial court judge; (4) disincentivize parties from engaging in gamesmanship and encourage them to work to obtain a fair and accurate trial the first time around; and (5) promote the interests of finality.

¶30     The People cite to a number of cases in which courts have reviewed unpreserved constitutional errors under the plain error standard. *See, e.g.*, *Puckett v. United States*, 556 U.S. 129, 133–43 (2009) (concerning a forfeited claim of breach of a plea agreement); *Wainwright v. Sykes*, 433 U.S. 72, 86–91 (1977) (concerning a forfeited challenge to a confession); *Martinez v. People*, 2015 CO 16, ¶¶ 13–15, 344 P.3d 862, 867–68 (concerning a forfeited claim of instructional error).  None of these cases, however, involved a claim of insufficient evidence of guilt.  Moreover, it is not clear to us that the adoption of a plain error standard of review in this context would, in fact, ensure a just outcome and promote judicial efficiency.  To the contrary, such a standard would merely postpone the issue (and, in meritorious cases, a just outcome) until the matter is raised during post-conviction proceedings.  *See Lacallo*, ¶ 71, 338 P.3d at 456–57 (Román, J., concurring in part and dissenting in part).

15

¶31 Nor do we agree that district court findings on sufficiency claims would necessarily assist in appellate review, either by allowing for the creation of a more complete record or by allowing trial courts to make additional findings and opine on how a legal issue should be resolved. As an initial matter, we note that, at the time a sufficiency issue is raised—whether during or after trial—the prosecution's case-in-chief has been completed, and we do not believe that we should adopt a preservation rule solely for the purpose of giving the prosecution a second chance to put on evidence that it should have introduced before it rested its case. In addition, to the extent that the sufficiency issue raises a purely legal question (e.g., of statutory construction), an appellate court, which would review that question de novo in any event, is in as good a position as the trial court to address the issue. And in considering preserved sufficiency claims, appellate courts must review the record de novo to determine whether the evidence was substantial and sufficient to sustain the conviction. *Clark*, 232 P.3d at 1291. The People make no persuasive argument as to why the same review is not equally feasible in cases involving unpreserved sufficiency claims.

¶32 We likewise do not agree that without a preservation requirement, defense counsel will engage in "gamesmanship," withholding viable motions for judgments of acquittal or new trials in order to take a chance on obtaining a vacation of the conviction on appeal. As we recently observed, "The assumption that any competent attorney would withhold a meritorious argument at trial in the hope of having something to argue on appeal if the trial goes badly belies reality." *Bondsteel v. People*, 2019 CO 26, ¶ 28, 439 P.3d 847, 852.

16

¶33    Lastly, we conclude that even a justified concern for finality in criminal cases must yield to the paramount interests of justice.  Our procedural rules exist both to "protect the innocent from an unjust conviction [and], of equal importance, to preserve the integrity of society itself by keeping sound and wholesome the process by which it visits its condemnation on a wrongdoer." *People v. Germany*, 674 P.2d 345, 349 (Colo. 1983).

¶34    Accordingly, we conclude that Colorado appellate courts should review sufficiency claims de novo, even when the defendant raises such issues for the first time on appeal and even if consideration of the issue involves a preliminary question of statutory construction.  To the extent that *Lacallo*, *Heywood*, and other cases from divisions of the court of appeals have concluded otherwise, we overrule those cases.

¶35    Having thus determined the appropriate standard of review, we turn to the merits of McCoy's sufficiency claims.

## B.  Interpretation of Section 18-3-404(1)(g)

¶36    McCoy contends that the evidence was legally insufficient to support his convictions for unlawful sexual contact under section 18-3-404(1)(g) because, in his view, the statute required the prosecution to prove—and it did not prove—that he was a physician and had performed a medical examination or treatment on either victim or that either victim had submitted to the sexual contact under the belief that he was receiving a medical examination or medical treatment.  To resolve this issue, we must first construe the pertinent statutory provision.

¶37    We review issues of statutory interpretation de novo. *Doubleday v. People*, 2016 CO 3, ¶ 19, 364 P.3d 193, 196.  In construing a statute, our primary purpose is to ascertain and

17

give effect to the legislature's intent. *Id.* To do so, we look first to the language of the statute, giving its words and phrases their plain and ordinary meanings. *Id.* We read statutory words and phrases in context, and we construe them according to the rules of grammar and common usage. *Id.*

¶38 We must also endeavor to effectuate the purpose of the legislative scheme. In doing so, we read that scheme as a whole, giving consistent, harmonious, and sensible effect to all of its parts, and we must avoid constructions that would render any words or phrases superfluous or lead to illogical or absurd results. *Id.* at ¶ 20, 364 P.3d at 196. If the statute is unambiguous, then we need look no further. *Id.* If, however, the statute is ambiguous, then we may consider other aids to statutory construction, including the consequences of a given construction, the end to be achieved by the statute, and the statute's legislative history. *Bostelman v. People*, 162 P.3d 686, 690 (Colo. 2007). A statute is ambiguous when it is reasonably susceptible of multiple interpretations. *People v. Opana*, 2017 CO 56, ¶ 35, 395 P.3d 757, 764.

¶39 Section 18-3-404(1)(g) provides, "Any actor who knowingly subjects a victim to any sexual contact commits unlawful sexual contact if: . . . The actor engages in treatment or examination of a victim for other than bona fide medical purposes or in a manner substantially inconsistent with reasonable medical practices."

¶40 The People assert, and the division concluded, that this provision is unambiguous and that it applies when *any* actor subjects the victim to sexual contact, regardless of whether that actor is a medical professional or the actor and victim are in a physician-patient relationship. *McCoy*, ¶¶ 44–46.

18

¶41    McCoy, in contrast, contends that the provision is ambiguous because it does not indicate whether the terms "treatment" and "examination" should be defined broadly, pursuant to standard dictionary definitions, or narrowly, so as to contemplate only medical examinations and examinations by those purporting to be medical practitioners. In McCoy's view, the terms must be defined narrowly because if they were defined broadly—e.g., to mean "to look over: inspect visually or by use of other senses," *Examine*, Webster's Third New Internat'l Dictionary (2002)—then the statute would prohibit consensual looking and touching between a consenting couple who were role-playing during sex.

¶42    In our view, the statutory language is reasonably susceptible of multiple interpretations. As the People say, the plain language of the statute broadly refers to "any actor" who engages in the prohibited conduct, and thus, the statute can be read to apply more broadly than just to physician-patient relationships. Similarly, the statute specifies a concern for examinations "for other than bona fide medical purposes or in a manner substantially inconsistent with reasonable medical practices." § 18-3-404(1)(g). This language, too, can be read as reaching beyond legitimate medical examinations performed by a physician.

¶43    As McCoy asserts, however, the statutory language could also reasonably be read to apply just to medical professionals, albeit ones performing inappropriate examinations. And as McCoy points out, although certain conduct proscribed by the statute requires the prosecution to prove that the victim did not consent, *see, e.g.*,

§ 18-3-404(1)(a), section 18-3-404(1)(g) does not contain such a limitation and can be read to include at least some consensual conduct.

¶44    In light of the foregoing, we conclude that the statute is ambiguous, and we therefore turn to other statutory construction aids, most notably the statute's extensive legislative history, to assist us in determining the legislature's intent. *See Bostelman*, 162 P.3d at 690.

¶45    The General Assembly added the provision at issue as part of a comprehensive rewriting of Colorado's sexual assault statutes. Hearing on H.B. 1042 before the H. Judiciary Comm., 50th Gen. Assemb., 1st Sess. (Jan. 28, 1975) (statement of Richard Wood, Denver District Attorney's Office, explaining the purpose of the bill). The bill's sponsors stated that they were seeking to bring the laws up to date and to "try and give the victim a fairer break than the victim has had in the past." *Id.* As part of this endeavor, the sponsors sought to address unique situations, such as in a physician-patient relationship in which a doctor uses no physical force to compel a victim's submission to a sexual offense but rather uses fraud to persuade the victim to consent. *Id.* (question of Representative Bendelow); *accord* Hearing on H.B. 1042 before the Subcomm. on H.B. 1042, H. Judiciary Comm., 50th Gen. Assemb., 1st Sess. (Feb. 17, 1975) (statements of Mike Stern, Colorado District Attorneys Association, and Representative Bendelow).

¶46    Several legislators also observed that this provision sought to cover not only doctors but also other types of "healers" (including faith healers, dentists, and social workers) and people who *pretend* to be doctors and who use the ruse of a medical examination to commit a sexual offense. *Id.* (statements of Representative Bendelow and

Richard Wood, Denver District Attorney's Office); Hearing on H.B. 1042, Subcomm. on H.B. 1042, H. Judiciary Comm., 50th Gen. Assemb., 1st Sess. (Feb. 19, 1975) (statements of Representative Bendelow and Richard Wood, Denver District Attorney's Office); Hearing on H.B. 1042, Subcomm. on H.B. 1042, H. Judiciary Comm., 50th Gen. Assemb., 1st Sess. (Feb. 24, 1975) (statements of Representative Bendelow and David Gilbreth, Colorado District Attorneys Association).

¶47    As Representative Bendelow explained:

> The word "medical" used to be in there. We used to say, "the actor engages in medical treatment." We took it out to deal with a faith healer or somebody using the ruse of some kind of medical treatment. We were afraid that someone could imply that they were a doctor when in fact they were not, and not be picked up. So anybody who engages in this kind of medical treatment which is inconsistent with reasonable medical practices could be picked up by this.

Hearing on H.B. 1042, H. Judiciary Comm., 50th Gen. Assemb., 1st Sess. (Feb. 27, 1975) (statement of Representative Bendelow).

¶48    This legislative history thus makes clear that in adopting the provision at issue, the General Assembly intended it to cover not only doctors and physician-patient relationships but also others who are, *or hold themselves out to be*, health treatment providers of any kind.

¶49    Our conclusion in this regard finds further support in the tenet of statutory construction requiring that we construe statutes "in a manner consistent with constitutional requirements whenever such a construction is reasonable and practical." *People v. Roybal*, 618 P.2d 1121, 1125 (Colo. 1980). As McCoy contends, a broad interpretation of section 18-3-404(1)(g) to cover, without limitation, "any actor" could

21

potentially be read to encompass at least some consensual sexual behavior between adults. Such a result, however, would be unconstitutional. *Cf. Lawrence v. Texas*, 539 U.S. 558, 567, 577–79 (2003) (concluding that a Texas statute making it a crime for two persons of the same sex to engage in certain intimate sexual conduct was unconstitutional as applied to two men who had engaged in a consensual act of sodomy in the privacy of their home because, among other things, such laws touch upon "the most private human conduct, sexual behavior, and in the most private of places, the home").

¶50    Applying the foregoing tools of statutory construction here, we conclude that section 18-3-404(1)(g) governs doctors and others who are, or hold themselves out to be, health treatment providers of any kind and who examine, treat, or purport to examine or treat victims for other than bona fide medical purposes or in a manner substantially inconsistent with reasonable medical practices. Such a construction gives meaning to all of the statutory language, is consistent with the legislature's intent, and avoids interpreting the statute in such a way as to lead to absurd or unconstitutional results.

¶51    In so concluding, we are unpersuaded by the People's contention that the General Assembly's decision to amend section 18-3-402(1)(g), C.R.S. (2018), to limit it to those "purporting to offer a medical service" means that the legislature necessarily intended for section 18-3-404(1)(g) to cover a broader range of conduct.

¶52    Section 18-3-402(1)(g) concerns the crime of sexual assault and provides that an actor who knowingly inflicts sexual intrusion or sexual penetration on a victim commits sexual assault if the actor, "while purporting to offer a medical service," engages in treatment or an examination of the victim for other than bona fide medical purposes or

22

in a manner substantially inconsistent with reasonable medical practices. That section previously had language identical to the language at issue in this case, but in 2000, the General Assembly amended the provision to add the "purporting to offer a medical service" language quoted above. *See* Ch. 171, sec. 18, § 18-3-402(1)(g), 2000 Colo. Sess. Laws 692, 699.

¶53 In light of the above-described legislative history of section 18-3-404(1)(g), it is not clear to us why the legislature did not make a corresponding change to that section. Unlike the People, however, absent any evidence to the contrary, we are unwilling to assume that the absence of such a change was intentional and was not the product of legislative oversight.

¶54 Accordingly, we conclude that section 18-3-404(1)(g) applies to doctors and others who are, or hold themselves out to be, health treatment providers of any kind. With this construction in mind, we proceed to address McCoy's overbreadth and vagueness challenges, as well as the merits of his sufficiency claims.

## C. Overbreadth

¶55 McCoy asserts that the division majority's interpretation of section 18-3-404(1)(g) renders that provision unconstitutionally overbroad because the majority's construction would sweep in a substantial amount of constitutionally protected conduct. We are not persuaded.

¶56 "The overbreadth doctrine addresses the concern that the scope of a law may be so broad that it restricts speech protected by the First Amendment or has a chilling effect

on such constitutionally protected speech." *People v. Graves*, 2016 CO 15, ¶ 12, 368 P.3d 317, 322.

¶57    In considering a facial challenge to a statute on the ground that it is overbroad, courts first must determine "whether the enactment reaches a substantial amount of constitutionally protected conduct.  If it does not, then the overbreadth challenge must fail."  *Vill. of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 494 (1982).  Courts are reluctant to strike down a statute on its face and will apply the overbreadth doctrine "only as a last resort."  *Graves*, ¶ 13, 368 P.3d at 323 (quoting *New York v. Ferber*, 458 U.S. 747, 769 (1982)).  "[I]f a limiting construction or partial invalidation will confine the statute to sufficiently narrow applications, the court should apply such a construction or partial invalidation to preserve the statute's constitutionality."  *Id.* at ¶ 16, 368 P.3d at 324.

¶58    Here, based on our construction of section 18-3-404(1)(g), we conclude that the statute is not unconstitutionally overbroad.  Under our construction, private, consensual sexual conduct between adults is not implicated by the statute.  Rather, the statute only precludes, as pertinent here, conduct in which one party falsely induces a victim to consent to sexual contact under the guise of purported health treatment or examination.

### D. Vagueness

¶59    For similar reasons, we reject McCoy's vagueness challenge to the statute.

¶60    "A law that . . . satisfies the overbreadth test may nevertheless be challenged on its face as unduly vague, in violation of due process."  *Vill. of Hoffman Estates*, 455 U.S. at 497.  A criminal statute is unconstitutionally vague when it "fails to give ordinary people

24

fair notice of the conduct it punishes, or [is] so standardless that it invites arbitrary enforcement." *Johnson v. United States*, 135 S. Ct. 2551, 2554 (2015). Thus, the vagueness doctrine requires that a criminal statute "be framed with sufficient clarity to alert all who are subject to its sanctions to the nature of the proscribed behavior and to inform them of permissible standards of conduct, that they may conduct themselves accordingly." *People v. Randall*, 711 P.2d 689, 691 (Colo. 1985).

¶61    Here, we conclude that section 18-3-404(1)(g) sets forth with sufficient clarity the nature of the prohibited behavior and informs those subject to its provisions of the permissible standards of conduct. By its plain terms, the statute indicates that it is unlawful for someone to deceive a victim into submitting to sexual contact by claiming that such contact is appropriate as a form of medical examination or treatment when, in fact, the contact is not for such a medical purpose. Moreover, it is inconceivable to us that a person in McCoy's position reasonably lacked notice that his deceptive conduct was unlawful under the statute.

### E. Sufficiency of the Evidence

¶62    Finally, having concluded that section 18-3-404(1)(g) passes constitutional muster, we address McCoy's contention that the evidence presented by the prosecution in this case was legally insufficient to establish his guilt beyond a reasonable doubt. McCoy argues that the prosecution failed to prove that he knowingly subjected the victims to sexual contact and that he knew his conduct was practically certain to cause P.K. and G.M. to submit to the sexual contact under the belief that they were receiving medical examinations. We are unpersuaded.

25

¶63 We review the record de novo to determine whether the evidence presented was sufficient in both quantity and quality to sustain a defendant's conviction. *Clark*, 232 P.3d at 1291. The prosecution has the burden of establishing a prima facie case of guilt through the introduction of sufficient evidence. *Id.* We consider "whether the relevant evidence, both direct and circumstantial, when viewed as a whole and in the light most favorable to the prosecution, is substantial and sufficient to support a conclusion by a reasonable mind that the defendant is guilty of the charge beyond a reasonable doubt." *Id.* (quoting *People v. Bennett*, 515 P.2d 466, 469 (1973)).

¶64 Here, we conclude that sufficient direct and circumstantial evidence supported McCoy's convictions.

¶65 As discussed above, section 18-3-404(1)(g) prohibits a doctor or other individual who is, or holds himself or herself out to be, a health treatment provider of any kind, from knowingly obtaining a victim's submission to sexual contact by examining, treating, or purporting to examine or treat the victim for other than a bona fide medical purpose or in a manner substantially inconsistent with reasonable medical practices. McCoy does not dispute that he knowingly subjected the victims to sexual contact, and thus the contested issue is whether or not McCoy is an individual covered by the provision.

¶66 At trial, both victims and numerous witnesses who testified to other acts pursuant to CRE 404(b) described their encounters with McCoy. G.M. testified that early in his interactions with McCoy, McCoy said that he was a pediatrician. P.K. likewise testified that McCoy had indicated that he was a physician (or, at another time, a Harvard-trained psychologist). Both men testified further that (1) McCoy told them that he needed to

check their physical fitness to ensure that they were capable of performing the purported jobs for which they were applying; (2) during the course of these physical examinations, McCoy asked them to remove clothing and touched their genitals or the area immediately next to their genitals; and (3) they told McCoy that they were uncomfortable with the touching and examinations or otherwise resisted. McCoy persuaded G.M. to permit the sexual contact by telling G.M. that he could not feel a pulse when he checked G.M.'s wrist and saying that he was "worried" about G.M.'s health. He also told G.M. that he "knew what he was doing."

¶67    The CRE 404(b) witnesses told of a similar pattern of conduct by McCoy. They testified that McCoy's standard technique was to tell young men whom he was purportedly recruiting for employment that he needed to conduct physical examinations to ensure that they were able to do the jobs for which they were applying. Before and during these physical examinations, McCoy repeatedly told the men that he was a doctor or that he had been trained in a medical field, a fact he used to reassure them about the sexual contact. And consistent with this pattern of conduct, McCoy told at least one of the young men that he could help relieve the man's depression, he informed another that he had a hernia in his testicle and the only way to get rid of it was to massage it all the time or have surgery, and all of the young men submitted to McCoy's sexual contact based on his representations.

¶68    The foregoing evidence amply supported the prosecution's theory that McCoy had induced the victims in this case to submit to sexual contact by falsely holding himself out to be a doctor and that he had reason to know that by doing so the victims were

27

practically certain to submit to his sexual contact under the belief that they would be receiving medical examinations.

¶69    Accordingly, we conclude that the evidence presented at trial was substantial and sufficient to permit a reasonable juror to conclude, beyond a reasonable doubt, that McCoy persuaded the victims to submit to unwanted sexual contact by persuading them that he was conducting a medical examination. Moreover, no evidence suggested that McCoy had conducted the purported medical examinations for bona fide medical purposes or in a manner consistent with reasonable medical practices.

### III. Conclusion

¶70    For the foregoing reasons, we conclude that sufficiency of the evidence claims may be raised for the first time on appeal and are not subject to plain error review. Accordingly, appellate courts should review unpreserved sufficiency claims de novo (i.e., in the same manner as if the claims were preserved), including when such claims involve preliminary questions of statutory construction. Reviewing McCoy's contentions under this standard here, we further conclude that section 18-3-404(1)(g) applies to a doctor or other individual who is, or holds himself or herself out to be, a health treatment provider of any kind, and who knowingly subjects the victim to sexual contact while examining, treating, or purporting to examine or treat the victim for other than a bona fide medical purpose or in a manner substantially inconsistent with reasonable medical practices. Because this construction defeats McCoy's assertions that section 18-3-404(1)(g) is overbroad or void for vagueness, we turn to the merits of McCoy's sufficiency challenge,

28

and we conclude that the evidence presented in this case was substantial and sufficient to support McCoy's convictions for unlawful sexual contact.

¶71     Accordingly, we affirm the division's judgment, although our analysis differs somewhat from that of the division.

     **JUSTICE SAMOUR** concurs in the judgment only, and **CHIEF JUSTICE COATS** and **JUSTICE BOATRIGHT** join in the concurrence in the judgment only.

JUSTICE SAMOUR, concurring in the judgment only.

¶72    I agree with the majority that we should affirm the judgment of the court of appeals. However, I would do so for different reasons. Therefore, I concur in the judgment only.

¶73    Like the majority, I would start with McCoy's unpreserved statutory construction argument, and I would apply de novo review to determine whether the trial court erred. *See People v. Perez*, 2016 CO 12, ¶ 8, 367 P.3d 695, 697 ("We review questions of statutory interpretation de novo."). Assuming the trial court erred in failing to interpret section 18-3-404(1)(g), C.R.S. (2018), as McCoy now proposes, I would ask whether such error requires reversal. For all the reasons articulated in my concurrence in the companion case of *Maestas v. People*, 2019 CO 45, __ P.3d __, I would not apply an error-determining standard (de novo review) to this reversal-determining question, as the majority does. Instead, I would apply a reversal-determining standard to the reversal-determining question. And I would conclude that plain error review is the correct standard of reversal. However, as I explain in *Maestas*, I would apply the U.S. Supreme Court's plain error framework pursuant to Fed. R. Crim. P. 52(b). I would reach McCoy's unpreserved sufficiency challenge only if any error in the trial court's failure to interpret section 18-3-404(1)(g) as he proposes now constitutes plain error.

¶74    Turning to the merits of McCoy's appeal, I would hold that he has not demonstrated that any error by the trial court in failing to interpret section 18-3-404(1)(g) as he now urges rises to the level of plain error. As the majority explains, section

1

18-3-404(1)(g) is ambiguous and incapable of interpretation without resort to statutory construction aids, including legislative history. Maj. op. ¶¶ 42–50. As such, any error in the trial court's interpretation of the statute, considered now at the time of review, *see Henderson v. United States*, 568 U.S. 266, 273–77 (2013), is not clear or obvious, and thus cannot be plain. *See United States v. Olano*, 507 U.S. 725, 734 (1993) (the word "plain" in this context "is synonymous with 'clear' or, equivalently, 'obvious'").

¶75 Given the determination of no plain error, I would not address McCoy's unpreserved contention that, based on his proposed statutory interpretation, the evidence presented at trial was insufficient to support his conviction.[1]

¶76 Accordingly, like the majority, I would affirm the judgment of the court of appeals. However, I would do so on different grounds. For this reason, I concur in the judgment only.

I am authorized to state that CHIEF JUSTICE COATS and JUSTICE BOATRIGHT join in this concurrence in the judgment only.

---

[1] McCoy does not contest the sufficiency of the evidence under the trial court's interpretation of section 18-3-404(1)(g), which he did not oppose. His sufficiency assertion hinges on his unpreserved statutory interpretation. And, since the trial court's failure to sua sponte adopt that interpretation does not rise to the level of plain error, there is no need to consider whether the evidence introduced was sufficient under such interpretation.