The summaries of the Colorado Court of Appeals published opinions constitute no part of the opinion of the division but have been prepared by the division for the convenience of the reader. The summaries may not be cited or relied upon as they are not the official language of the division. Any discrepancy between the language in the summary and in the opinion should be resolved in favor of the language in the opinion.

SUMMARY
March 12, 2026

## 2026COA15

**No. 25CA0859, *Barba v. Industrial Claim Appeals Office* — Workers' Compensation — Medical Impairment Benefits — Final Admission of Liability**

A division of the court of appeals addresses a novel issue regarding the impact of section 8-42-107(8)(f), C.R.S. 2025, a provision of the Workers' Compensation Act of Colorado, on the information employers may include in a final admission of liability. That statute requires employers submitting a final admission of liability to "admit liability for related reasonable and necessary medical benefits by an authorized treating physician" in all claims when "an authorized treating physician recommends medical benefits after maximum medical improvement," and the record does not contain a "contrary medical opinion."

The division interprets the statutory provision stating that the "related reasonable and necessary medical benefits" admitted in a

final admission of liability "are not limited to any specific medical treatment" to mean that an employer cannot limit maintenance medical benefits to any specific medical treatment and that any attempt to do so is a nullity. In addition, the division concludes that section 8-42-107(8)(f) neither prohibits an employer from referring to a physician's report in a final admission of liability when admitting liability for maintenance medical benefits nor implies that such a reference constitutes an impermissible limitation on benefits.

COLORADO COURT OF APPEALS **2026COA15**

Court of Appeals No. 25CA0859
Industrial Claim Appeals Office of the State of Colorado
WC No. 4-972-041

Fredy Barba,

Petitioner,

v.

Industrial Claim Appeals Office of the State of Colorado and Cardinal Health 200, Inc.,

Respondents,

and

Sedgwick Claims Management Services, Inc. TPA,

Insurer-Respondent.

ORDER AFFIRMED

Division V
Opinion by JUDGE LIPINSKY
Welling and Tow, JJ., concur

Announced March 12, 2026

Elliott & Montgomery, Mark D. Elliott, Erin Montgomery, Arvada, Colorado for Petitioner

No Appearance for Respondent Industrial Claim Appeals Office

Hall & Evans, L.L.C., Douglas J. Kotarek, Matthew J. Hegarty, M. Taylor Feero, Denver, Colorado for Respondent Cardinal Health 200, Inc. and Insurer-Respondent Sedgwick Claims Management Services, Inc. TPA

¶ 1    This case presents a novel issue regarding the impact of section 8-42-107(8)(f), C.R.S. 2025, of the Workers' Compensation Act of Colorado (the Act) on the information employers may include in a final admission of liability (FAL). That statute requires employers submitting a FAL to "admit liability for related reasonable and necessary medical benefits by an authorized treating physician" in all claims when "an authorized treating physician recommends medical benefits after maximum medical improvement" and the record does not contain a "contrary medical opinion." *Id.*

¶ 2    The parties dispute the meaning of the statutory language providing that the "related reasonable and necessary medical benefits" admitted in a FAL "are not limited to any specific medical treatment." *Id.*

¶ 3    Claimant, Fredy Barba, sustained a back injury in the course and scope of his employment with Cardinal Health 200, Inc., in 2013. In this appeal, Barba contends that Cardinal's insurance carrier — XL Specialty Insurance Company — and XL's third-party administrator — Sedgwick Claims Management Services, Inc. TPA — violated section 8-42-107(8)(f) by adding, next to the FAL's "Yes" box for maintenance care after maximum medical

improvement, a reference to a physician's report recommending a specific maintenance program. (We refer to XL and Sedgwick jointly as "insurer.") He asserts that the administrative law judge (ALJ) who presided over the hearing on his penalty claim (the penalty hearing) erred by not imposing statutory penalties for this alleged statutory violation. Barba's counsel clarified at oral argument that Barba sought penalties from Cardinal and insurer. Section 8-43-304(1), C.R.S. 2025, permits the assessment of penalties against "[a]ny employer or insurer, or any officer or agent of either, or any employee, or any other person who violates" the Act.

¶ 4    Barba also contends that the ALJ erred at the penalty hearing by permitting a claims adjuster to explain why she added the reference to the physician's report to the FAL and that the facts did not support the ALJ's rejection of his penalty claim. For these reasons, Barba asks us to reverse the order of the Industrial Claim Appeals Office (the Panel) affirming the ALJ's decision.

¶ 5    We disagree with Barba's interpretation of section 8-42-107(8)(f) and his other arguments. Therefore, we affirm the Panel's order.

## I.    Background

¶ 6    Following his back injury, Barba underwent surgery and engaged in physical therapy.  Barba's authorized treating physician placed him at maximum medical improvement (MMI) — the "point in time when any medically determinable physical or mental impairment as a result of injury has become stable and when no further treatment is reasonably expected to improve the condition," § 8-40-201(11.5), C.R.S. 2025 — on December 1, 2015.  The authorized treating physician assigned a 25% whole person impairment rating and recommended a specific course of post-MMI maintenance treatment.

¶ 7    On behalf of Cardinal, insurer filed a FAL form that was consistent with the authorized treating physician's report.  Barba objected to the FAL and requested a Division Independent Medical Examination (DIME).  A DIME physician confirmed the MMI date of December 1, 2015, and assigned a 24% whole person impairment rating.  In January 2017, insurer filed an amended FAL consistent with the DIME.  Barba's case was then closed.

¶ 8    Barba continued to receive post-MMI maintenance care from his authorized treating physician.  But in October 2018, Barba

reported that his condition had worsened after he bent down to pick up a piece of paper. He sought to reopen his workers' compensation award. An ALJ determined that reopening was warranted based on proof that Barba had experienced a change in condition causally connected to his original work injury.

¶ 9 Barba received further monitoring and treatment for his back injury. In 2024, he underwent another DIME, which Dr. Bryan Alvarez performed. In his DIME report dated March 28, 2024 (the Alvarez report), Dr. Alvarez concluded that Barba had reached MMI on December 1, 2015, and assigned a 17% whole person impairment rating. Dr. Alvarez recommended that Barba undergo physical therapy for three months.

¶ 10 In April 2024, the Division of Workers' Compensation (Division) issued a notice of "DIME Process Concluded" that required "the insurance carrier" either to (1) "admit liability consistent with the DIME report" or (2) "file an application for hearing." Blayre Spring, a claims adjuster for Sedgwick, filed a FAL on behalf of Cardinal and insurer. The FAL said that Cardinal and insurer admitted liability consistent with the report, including liability for permanent partial disability (PPD) benefits totaling

$62,451.20 and maintenance medical benefits. As relevant to this appeal, on the FAL form, Spring checked the "Yes" box for "[a]dmit[ting] to [m]aintenance [c]are after MMI." On the same line as the "Yes" box, Spring wrote, "Pursuant to Dr. Bryan Alvarez's medical report dated 03/28/2024." On the next line, next to "[r]emarks and basis for permanent disability award," Springer summarized Cardinal and insurer's position regarding the PPD benefits to which Barba was entitled "[p]ursuant to" the Alvarez report.

¶ 11    Barba asserted that he was entitled to penalties under section 8-43-304(1) because the reference to the Alvarez report in the FAL violated section 8-42-107(8)(f). That statute says:

> In all claims in which an authorized treating physician recommends medical benefits after maximum medical improvement, and there is no contrary medical opinion in the record, the employer shall, in a [FAL], admit liability for related reasonable and necessary medical benefits by an authorized treating physician, *which benefits are not limited to any specific medical treatment.*

(Emphasis added.) Barba specifically argued that he was entitled to recover penalties because insurer had limited his maintenance

medical benefits by "t[ying]" them to the treatment recommended in the Alvarez report.

¶ 12    At the penalty hearing, the ALJ permitted Spring to explain why she had inserted the reference to the Alvarez report in the FAL. She testified that "there was no intention to tie maintenance to a specific physician" or "limit the maintenance [liability] that [Cardinal and insurer] were admitting to," but, rather, she only sought to show the source of her "information regarding maintenance." She said that because, in some instances, "the same doctor" does not issue findings regarding both "PPD or maintenance," she indicates on the appropriate lines of the FAL form which physician's report supports the PPD award and which report addresses maintenance treatment. Spring said that she added the reference to the Alvarez report near the "Yes" box solely to note that Dr. Alvarez was the physician who had recommended maintenance treatment for Barba.

¶ 13    When counsel for Sedgwick asked Spring whether she "intend[ed] to limit [Barba]'s maintenance treatment to any specific treatment recommended by Dr. Alvarez," Barba's counsel objected that Spring's "intention [was] irrelevant." The ALJ overruled the

objection, explaining that "there exists a question of fact here as to whether or not" the reference to the Alvarez report was "a limitation on maintenance medical benefits" and that Spring's intent was relevant to such question.

¶ 14    Spring then testified that she had not limited Barba's maintenance medical benefits to "Dr. Alvarez's recommendations." In addition, she testified that, at Barba's request, she had removed the reference to the Alvarez report from an amended FAL she issued on June 28, 2024.

¶ 15    After the penalty hearing, the parties submitted proposed findings of fact and conclusions of law.  In his proposed findings and conclusions, Barba asserted that he was entitled to penalties because, even though Spring "claimed no intention to limit maintenance medical treatment," that was "exactly what [she] did." According to Barba, the reference to the Alvarez report in the context of the admission regarding maintenance medical benefits "specifically contradicted" section 8-42-107(8)(f)'s "clear statutory" mandate that such benefits "cannot be limited to any specific medical treatment."  He asserted that the reference also violated Rule 5-5(A)(1) of the Workers' Compensation Rules of Procedure.

*See* Div. of Workers' Comp. Rule 5-5(A)(1), 7 Code Colo. Regs. 1101-3 (WCRP 5-5(A)(1)).

¶ 16    The ALJ denied Barba's request for penalties and determined that whether the reference to the Alvarez report in the FAL constituted an improper limitation on maintenance benefits was a question of fact.  The ALJ found that Spring's reference to the Alvarez report was neither intended to limit nor, in fact, limited Barba's maintenance medical benefits.  Rather, crediting Spring's testimony, the ALJ found that the language "merely indicated the rationale" for Cardinal and insurer's general admission to such benefits.

¶ 17    Barba sought review from the Panel, which affirmed the ALJ's order.  The Panel rejected Barba's assertion that Spring's identification of the Alvarez report on "the maintenance section of the [FAL was] necessarily a denial of or limitation on maintenance medical benefits."  In addition, the Panel concluded that section 8-42-107(8)(f) "does not provide an express prohibition against mentioning a 'doctor's report' in connection with an admission of liability for maintenance medical benefits" because the statute only

requires that "the admission not limit benefits to any specific medical treatment."

## II.   The Panel Did Not Misinterpret Section 8-42-107(8)(f)

¶ 18   Barba contends that the Panel erred by affirming the ALJ's order declining to impose penalties for the alleged violation of section 8-42-107(8)(f), which he asserts that the Panel misinterpreted.  Although he presents several arguments in support of this contention, he acknowledges that his appeal focuses on "the proper interpretation" of section 8-42-107(8)(f).  As we understand Barba's argument, he asserts that he is entitled to recover penalties because the language of section 8-42-107(8)(f) providing that related reasonable and necessary maintenance medical benefits "are not limited to any specific medical treatment" prohibits an employer, when admitting liability for maintenance medical benefits in a FAL, from referring to a physician's report recommending specific medical treatment.  We disagree.

### A.   Statutory Interpretation

¶ 19   We review the Panel's interpretation of section 8-42-107(8)(f) de novo.  *See Destination Maternity v. Burren*, 2020 CO 41, ¶ 22, 463 P.3d 266, 273 ("We review the proper construction of statutes

9

de novo." (quoting *Williams v. Kunau*, 147 P.3d 33, 36 (Colo. 2006))). When interpreting a statute, we must determine and give effect to the General Assembly's intent. *Davison v. Indus. Claim Appeals Off.*, 84 P.3d 1023, 1029 (Colo. 2004). We begin with the plain language of the statute, giving words and phrases their plain and ordinary meanings, and construing them according to the rules of grammar and common usage. *McCoy v. People*, 2019 CO 44, ¶ 37, 442 P.3d 379, 389. We respect the General Assembly's choice of language, and we may not add words to or subtract words from the statute. *UMB Bank, N.A. v. Landmark Towers Ass'n*, 2017 CO 107, ¶ 22, 408 P.3d 836, 840. If the statutory language is unambiguous, we look no further. *McCoy*, ¶ 38, 442 P.3d at 389.

### B. Analysis

¶ 20 As noted above, section 8-42-107(8)(f) says that when an authorized treating physician recommends maintenance medical benefits, and there is no contrary medical opinion, the employer shall admit in its FAL "liability for related reasonable and necessary medical benefits . . . , *which benefits are not limited to any specific medical treatment.*" (Emphasis added.) This language is clear: In a

10

FAL, an employer cannot limit maintenance medical benefits to any specific medical treatment, and any attempt to do so is a nullity.

¶ 21    Contrary to Barba's argument, however, section 8-42-107(8)(f) does not prohibit an employer from referring to a physician's report in a FAL when admitting liability for maintenance medical benefits, nor does it imply that such a reference would constitute an impermissible limitation on benefits. *See UMB Bank*, ¶ 22, 408 P.3d at 840. If the General Assembly had intended that section 8-42-107(8)(f) direct what employers must — and must not — include in an admission for maintenance medical benefits, it knew how to do so. *See, e.g.*, § 8-43-203(2)(b)(II)(A), C.R.S. 2025 (requiring that a FAL "must include" certain statements and saying that, when "predicated upon medical reports, the reports must accompany the final admission"); *see also Students for Concealed Carry on Campus, LLC v. Regents of Univ. of Colo.*, 280 P.3d 18, 23 (Colo. App. 2010) ("Had the legislature intended to exempt universities, it knew how to do so."), *aff'd*, 2012 CO 17, 271 P.3d 496. If the General Assembly believes that employers should be subject to penalties if they refer to a physician's report in a FAL, it can amend section 8-42-107(8)(f) to say so. It is not our role to

rewrite the statute to achieve this result. *See People v. Rau*, 2022 CO 3, ¶ 34, 501 P.3d 803, 813 ("It is for the legislature, not our court, to rewrite a statute.").

¶ 22  Thus, because section 8-42-107(8)(f) lacks an express prohibition against referring to a physician's report when an employer admits liability for maintenance medical benefits, we may not read such a prohibition into the statute. *See Kraus v. Artcraft Sign Co.*, 710 P.2d 480, 482 (Colo. 1985).

¶ 23  Nor are we persuaded that the principle of liberal construction of the Act to effectuate its beneficent purposes, *see* § 8-40-102(1), C.R.S. 2025, mandates a different outcome. "[L]iberal construction does not grant us authority to disregard the Act's plain language or read nonexistent provisions into the Act." *Salazar v. Indus. Claim Appeals Off.*, 2022 COA 13, ¶ 31, 508 P.3d 805, 813.

¶ 24  Accordingly, we perceive no error in the Panel's interpretation of section 8-42-107(8)(f). And because we conclude that the statute is clear, we need not reach Barba's legislative history arguments. *See McCoy*, ¶ 38, 442 P.3d at 389 (holding that courts may only resort to "other aids to statutory construction, including . . . the statute's legislative history," when statutory language is

ambiguous).  (To the extent Barba relies in his opening brief on the history of amendments to WCRP 5-5(A)(1), we do not consider such argument because he did not raise it before the Panel.  *See McClaflin v. Indus. Claim Appeals Off.*, 126 P.3d 288, 289 (Colo. App. 2005) (declining to consider argument not raised to the Panel).)

III.    The Panel Did Not Otherwise Err by Affirming the ALJ's Order

¶ 25    We next turn to Barba's contention that the Panel erred by accepting the ALJ's resolution of two factual issues.  He argues that the ALJ admitted irrelevant evidence at the penalty hearing and that the undisputed facts do not support the ALJ's finding that Cardinal and insurer did not violate section 8-42-107(8)(f).

¶ 26    We reject this contention in light of our reading of the plain language of section 8-42-107(8)(f) and, therefore, need not reach Barba's arguments regarding the admission of allegedly irrelevant evidence and the purported lack of factual support for the ALJ's determination.

¶ 27    Barba asserts that Cardinal and insurer are liable for a penalty because they "failed to take an action that a reasonable insurer would have taken to comply with a statute or rule" and,

13

under the applicable standard, "violated an order, statute, or rule and failed to take an action that a reasonable insurer would have taken." *See* § 8-43-304(1); *Pioneers Hosp. v. Indus. Claim Appeals Off.*, 114 P.3d 97, 99 (Colo. App. 2005) ("An ALJ may impose a penalty under [section] 8-43-304(1) if it is shown that the employer failed to take an action that a reasonable employer would have taken to comply with a rule.").

¶ 28    Significantly, Barba's penalty argument rests on his contention that Cardinal and insurer violated section 8-42-107(8)(f) — not that they *attempted* to violate the statute. Thus, we need not address whether Cardinal and insurer's alleged attempt to violate section 8-42-107(8)(f) subjects them to a penalty. *Cf. Delta Cnty. Mem'l Hosp. v. Indus. Claim Appeals Off.*, 2021 COA 84, ¶¶ 45-46, 495 P.3d 984, 995 (affirming a penalty award entered against a medical provider that violated section 8-42-101(4), C.R.S. 2025, which bars employers and insurers from *seeking* to recover medical costs or fees from an employee following an admission of liability or the entry of a final order regarding liability for those costs or fees).

14

¶ 29    Because, as a matter of law, Cardinal and insurer could not limit Barba's maintenance benefits by referring to the Alvarez report in the FAL, even if Cardinal and insurer intended to limit Barba's benefits, Cardinal and insurer did not violate section 8-42-107(8)(f). Thus, it is of no consequence that the ALJ may have erroneously considered irrelevant evidence or that the undisputed facts may not have supported the ALJ's decision.  No matter what evidence the parties presented or what facts they established at the penalty hearing, Cardinal and insurer did not violate section 8-42-107(8)(f). Thus, they cannot be held liable for a penalty under section 8-43-304(1).

¶ 30    Moreover, in light of our interpretation of section 8-42-107(8)(f), we disagree with Barba's policy argument that, because "injured workers" cannot "divine the subjective intent of an adjuster from an incorrectly filled out" FAL, the ALJ's "subjective intent approach," as reflected in the ALJ's consideration of Spring's testimony regarding her reasons for inserting the reference to the Alvarez report in the FAL, will "result in multiple, unnecessary applications for hearing."  This opinion makes clear that injured workers have no reason to fear that a reference to a physician's

15

report in a FAL will limit the future medical treatments they will receive under the Act.

## IV. Disposition

¶ 31    The Panel's order is affirmed.

JUDGE WELLING and JUDGE TOW concur.