2013 COA 121

The **PEOPLE** of the State of Colorado, Plaintiff–Appellee,

v.

Beau Thomas **RUSSELL**, Defendant–Appellant.

**Court of Appeals No. 11CA2315**

Colorado Court of Appeals, Div. I.

Announced August 15, 2013

John W. Suthers, Attorney General, Christine C. Brady, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

Douglas K. Wilson, Colorado State Public Defender, Alan Kratz, Deputy State Public Defender, Denver, Colorado, for Defendant–Appellant.

Opinion by Judge TAUBMAN

¶ 1 Defendant, Beau Thomas Russell, appeals the trial court's restitution order, which included a mandated statutory penalty following his plea of guilty to one count of forgery. We affirm in part, reverse in part, and remand for further proceedings.

## I. Background

¶ 2 This case stems from the trial court's entry of a restitution order after Russell pleaded guilty to one count of forgery. Russell's plea resulted from his receipt of $3,321 of unemployment compensation benefits, over a two-month period, after he falsely reported himself as unemployed to the Unemployment Benefits Division of the Colorado Department of Labor and Employment (CDLE). The trial court sentenced Russell to probation and ordered him to pay restitution totaling $5,105.50. The restitution order consisted of: (1) the amount of improperly received unemployment compensation benefits, $3,321; (2) expert document examination fees, $120; and (3) a statutory penalty of fifty percent of the amount of improperly received benefits, $1,660.60, under section 8–81–101(4)(a)(II), C.R.S.2012.

¶ 3 At the restitution hearing, Russell objected to the inclusion of the statutory penalty in the restitution order. Relying on an unpublished decision of this court,[1] the trial court overruled Russell's objection.

¶ 4 This appeal followed.

1. *People v. Martinez,* 2004 WL 1048400 (Colo. App. No. 02CA1778, May 6, 2004) (not published

## II. Standard of Review

¶ 5 We review a trial court's imposition of a restitution order for an abuse of discretion. *People v. Reyes*, 166 P.3d 301, 302 (Colo.App.2007). A trial court necessarily abuses its discretion when it misconstrues or misapplies the law. *Id.*

¶ 6 We review de novo a trial court's interpretation of a statute. *Dubois v. People*, 211 P.3d 41, 43 (Colo.2009). When interpreting a statute, we must ascertain and give effect to the legislative intent of the General Assembly. *Id.* If the language of the statute is unambiguous, we must give effect to the terms of the statute without considering any other principles of statutory interpretation. *Id.* However, if the plain language of the statute is ambiguous or conflicts with other provisions of the statute, we may look beyond the language of the statute. *See People v. Luther*, 58 P.3d 1013, 1015 (Colo.2002); *Buckley v. Chilcutt*, 968 P.2d 112, 117 (Colo. 1998).

## III. Discussion

¶ 7 Russell asserts that under *People v. Welliver*, 2012 COA 44, ¶ 15, —— P.3d ——, 2012 WL 865494, the trial court erred when it included the statutory penalty in the restitution order. The People, however, assert that *Welliver* was improperly decided, because the division did not consider a portion of section 8–81–101(4)(a)(II) discussing "inequitability." We agree with Russell.

¶ 8 Relevant to our discussion are two statutes: (1) the Restitution Act, section 18–1.3–602(3)(a), C.R.S.2012; and (2) the penalty provision of the Colorado Employment Security Act (CESA), section 8–81–101(4)(a)(II).

¶ 9 First, the Restitution Act defines "restitution" as:

[A]ny pecuniary loss suffered by a victim ... includ[ing] but ... not limited to all out-of-pocket expenses, interest, loss of use of money, anticipated future expenses, rewards paid by victims, money advanced by law enforcement agencies, money advanced by a governmental agency for a service animal, adjustment expenses, and other losses or injuries proximately caused by an

pursuant to C.A.R. 35(f)).

offender's conduct ... that can be reasonably calculated and recompensed in money. 'Restitution' does not include damages for physical or mental pain and suffering, loss of consortium, loss of enjoyment of life, loss of future earnings, or punitive damages.

§ 18–1.3–602(3)(a).

¶ 10 Second, the penalty provision of the CESA provides:

If any person receives any such overpayment [of unemployment benefits] because of his or her false representation or willful failure to disclose a material fact, inequitability shall not be a consideration in any ... criminal action, and the person shall be required to pay the total amount of the overpayment ... plus a penalty of fifty percent of such overpayment....

§ 8–81–101(4)(a)(II). The purpose of the penalty is to enforce compliance with the provisions of the CESA. *People v. Welliver*, ¶ 15. All revenue collected under this penalty provision is paid into the unemployment revenue fund—a general fund used for enforcement purposes. *Id.*

¶ 11 In *Welliver*, a division of this court held that under the restitution statute, the penalty under the CESA cannot be included in a defendant's restitution order unless the People prove that the sum is a pecuniary loss suffered by the entity receiving the sum as a natural and probable consequence of the defendant's conduct. *Id.* at ¶¶ 11, 15. Thus, the division reasoned that the penalty amount under the CESA cannot be included in a restitution order, unless the People show that the general fund suffered a loss as a proximate consequence of the defendant's actions, such as for investigative costs expended in recovering the improperly received benefits. *Id.* at ¶ 15.

¶ 12 The People, however, assert that the analysis in *Welliver* was incomplete because it did not acknowledge that the penalty provision of the CESA precludes the consideration of inequitability when imposing the statutory penalty. *See* § 8–81–101(4)(a)(II). Specifically, the People assert that because

inequitability cannot be used as a consideration in requiring payment under the penalty provision, it does not matter under the restitution statute that the penalty charged to the claimant does not relate to the actual investigative costs expended from the unemployment fund in the claimant's case. Rather, they contend that by stating in the penalty provision that inequitability should not be considered, the General Assembly "pre-calculated" the reasonable amount owed. We are not persuaded.

¶ 13 "Inequitability" is not defined in the statute, and the People provide no support for the assertion that the term was intended to allow the penalty provision to supersede the requirement under the restitution statute that a restitution amount be proximately related to a defendant's conduct.

■ ¶ 14 In *Woollems v. Industrial Claim Appeals Office*, 43 P.3d 725, 726 (Colo.App. 2001), a division of this court interpreted the term "inequitability" in subsection (4)(a)(II) and concluded that its meaning was guided by the preceding subsection of the statute, which provides:

> Any person who has received any sum as benefits under ... this title to which he was not entitled shall be required to repay such amount to the division for the fund. Such sum shall be collected in the manner provided in section 8–79–102[, C.R.S.2012]; *except that the division may waive the repayment of an overpayment if the division determines such repayment to be inequitable.*

§ 8–81–101(4)(a)(I), C.R.S.2012 (emphasis added). For the purpose of this subsection, Department of Labor & Employment Regulation 15.2.7, 7 Code Colo. Regs. 1101–2, defines the factors that can be considered when determining whether repayment of an overpayment would be inequitable. Those factors concern a claimant's financial circumstances and his or her ability to repay an overpayment of unemployment compensation benefits. *Id.* Thus, we conclude that the term "inequitability," as used in subsection (4)(a)(II), relates only to a claimant's financial circumstances in repaying improperly received benefits. The use of "inequitability" in the subsection does not, however, refer to the proximate cause requirement in the restitution statute. Rather, because "inequitability" in subsection (4)(a)(I) refers only to waiver of an overpayment, its reference in subsection (4)(a)(II) must similarly be interpreted to mean that, in a criminal action alleging improper receipt of unemployment compensation benefits, a defendant may not raise inequitability as a defense on the merits or to the amount of restitution. The language in subsection (4)(a)(II) simply does not apply to the statutory penalty.

¶ 15 Accordingly, we reject the People's assertion that the "inequitability" language in the penalty provision of the CESA eliminates the need to find a causal link between a defendant's conduct and the statutory penalty before a court can include the penalty in a restitution order. We, therefore, also conclude that *Welliver* was properly decided.

■ ¶ 16 Thus, the trial court could not impose the statutory penalty without prior proof of a correlation between Russel's actions and the amount of the statutory penalty. *See Welliver*, ¶ 15; *People v. Rivera*, 250 P.3d 1272, 1275 (Colo.App.2010). Because there is no evidence in the record, nor do the People argue, that the CESA statutory penalty relates in any way to the cost of investigating Russell's conduct, the trial court abused its discretion by including the statutory penalty in the restitution order.

¶ 17 Because we conclude that the trial court abused its discretion by including the penalty in Russell's restitution order, we need not consider his remaining assertions on appeal.

## IV. Remedy

■ ¶ 18 The People assert that, if we conclude the trial court improperly included the penalty in the restitution order, we should nevertheless decline to apply the remedy applied in *Welliver*—vacating the restitution order to the extent that it includes the statutory penalty—because section 8–81–101(4)(a)(II) makes the penalty mandatory. Specifically, the People assert that the remedy imposed in *Welliver* violated the CESA statute, and therefore, the *Welliver* division should have remanded to the trial court to

issue a separate order directing payment of the penalty provision. We disagree.

¶ 19 The *Welliver* division concluded that the trial court was not authorized to issue a separate, nonrestitution order in the amount of the penalty. Instead, it concluded that a person who commits unemployment benefits fraud could be criminally prosecuted directly under section 8–81–101, which makes it a misdemeanor to make false statements in an attempt to obtain or increase benefits. If a defendant was convicted under section 8–81–101, the court would be required to order payment of the penalty as part of the defendant's punishment in that criminal case.

¶ 20 The *Welliver* division also noted that the CDLE has other mechanisms by which to enforce and collect the penalty. *See generally* § 8–79–102 (allowing CDLE to use civil remedies to collect overpaid benefits, including any penalties and interest).

¶ 21 We agree with the *Welliver* division that inclusion of the statutory penalty in a criminal sentence is not the only means of ensuring compliance with the statute. Russell was convicted of forgery, not under the criminal provision on section 8–81–101. Had the People intended to include the full statutory penalty provided in section 8–81–101, they would have had to have charged Russell under the misdemeanor provision of section 8–81–101. Similarly, the People could pursue collection through civil proceedings under section 8–79–102.

¶ 22 Accordingly, because the statutory penalty was improperly included in the restitution order, the restitution order is reversed as to the CESA penalty, and the case is remanded for the trial court to amend the order by deleting the amount of the fifty percent penalty from the restitution award. The order is affirmed in all other respects.

Judge FOX and Judge STERNBERG * concur.