2015 COA 8

**The PEOPLE of the State of Colorado, Plaintiff–Appellee,**

**v.**

**Ronald CLANTON, Defendant–Appellant.**

**Court of Appeals No. 12CA1144**

Colorado Court of Appeals,
Div. VI.

Announced February 12, 2015

Cynthia H. Coffman, Attorney General, Ethan E. Zweig, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

Douglas K. Wilson, Colorado State Public Defender, Audrey E. Bianco, Deputy State Public Defender, Denver, Colorado, for Defendant–Appellant.

Opinion by JUDGE J. JONES

¶ 1 Defendant, Ronald Clanton, appeals his conviction for forgery and the restitution portion of his sentence. We affirm the conviction but vacate that portion of his sentence that includes a statutory penalty as part of his restitution obligation and remand the case to the district court.

## I. Background

¶ 2 Defendant obtained unemployment compensation benefits to which he was not entitled by using a false Social Security number and a fake military discharge form. The People charged him with one count of forgery and one count of attempt to influence a public servant based on his indorsement and cashing of state-issued checks.

¶ 3 The trial court found defendant not guilty of attempt to influence a public servant but guilty of forgery. The court sentenced defendant to eighteen months of probation and ordered him to pay $12,397.50 in restitution. That total included a fifty percent statutory penalty of $4132.50, which the court believed was required by section 8–81–101(4)(a)(II), C.R.S. 2014.

## II. Discussion

¶ 4 Defendant contends that he was unlawfully convicted of forgery because: (1) his conduct could be charged only under section 8–81–101(1)(a); and (2) charging him with forgery when his conduct could have been charged under section 8–81–101(1)(a) violated his constitutional right to equal protection of the laws. He also contends that the court erroneously imposed the statutory penalty as part of restitution because the penalty does not represent a pecuniary loss to the victim.

### A. General or More Specific Statutory Prohibition

¶ 5 The People charged defendant under the general forgery statute, section 18–5–102, C.R.S. 2014, which is part of the Colorado Criminal Code. Defendant contends that because his conduct fit the more specific statute prohibiting the making of a false statement of material fact, with intent to defraud, to obtain unemployment compensation benefits, section 8–81–101(1)(a), he could be charged only under the latter statute. The statutory basis of the charge matters because forgery is a felony, but making a false statement in violation of section 8–81–101(1)(a) is only a misdemeanor. Defendant asserts that it also matters because if the People could only have charged him under section 8–81–101(1)(a), he cannot be charged under that section if we reverse his forgery conviction. *See* § 18–1–408(2), C.R.S. 2014 (where several offenses are known to the prosecuting authority at the time charges are instituted, they must be prosecuted in a single prosecution if they arise out of the same act or series of acts; "any offense not thus joined by separate count cannot thereafter be the basis of a subsequent prosecution").

¶ 6 We conclude that the People could charge defendant under the general forgery statute.

### 1. Applicable Law and Standard of Review

¶ 7 As relevant here, the general forgery statute under which the People charged defendant provides:

(1) A person commits forgery, if, with intent to defraud, such person falsely makes, completes, alters, or utters a written instrument which is or purports to be, or which is calculated to become or to represent if completed:

. . .

(e) A written instrument officially issued or created by a public office, public servant, or government agency. . . .

§ 18–5–102(1)(e). "Forgery is a class 5 felony." § 18–5–102(2).

¶ 8 The Colorado Employment Security Act (the Act), sections 8–70–101 to 8–82–105, C.R.S. 2014, includes a provision, section 881–101, setting forth penalties for certain violations of the Act. Defendant contends that the conduct with which he was charged fits within subsection (1)(a) of that provision. It states, in relevant part:

Any person who makes [a] false statement or representation of a material fact knowing it to be false, or knowingly fails to disclose a material fact, with intent to defraud by obtaining or increasing any benefit under articles 70 to 82 of this title or under an employment security law of any other state, of the federal government, or of a foreign government, either for himself or for any other person, is guilty of a misdemeanor. . . .

¶ 9 Whether a person may be charged under a generally applicable criminal statute or must be charged only under a more specific provision prohibiting the same conduct is an issue governed by now familiar principles.

¶ 10 "[A] single transaction may give rise to the violation of more than one statute." *People v. James,* 178 Colo. 401, 404, 497 P.2d 1256, 1257 (1972). "When any conduct of a defendant establishes the commission of more than one offense, the defendant may be prosecuted for each such of-

fense." § 18–1–408(2). And "[i]f the same conduct is defined as criminal in different enactments or in different sections of this code, the offender may be prosecuted under any one or all of the sections or enactments," subject to certain limitations not relevant here. § 18–1–408(7). In this regard, "[i]t is immaterial to the prosecution that one of the enactments or sections characterizes the crime as of lesser degree than another, or provides a lesser penalty than another . . . ." *Id.* It is up to the prosecutor to determine which crimes to charge when a person's conduct arguably violates more than one statute. *James,* 178 Colo. at 404, 497 P.2d at 1258; *see also People v. Smith,* 938 P.2d 111, 115 (Colo. 1997) ("Ordinarily, a prosecutor has discretion to charge any applicable offense."); *People v. Warner,* 930 P.2d 564, 568 (Colo. 1996).

¶ 11 Nevertheless, prosecution under a general criminal statute may be barred where "a legislative intent is shown to limit prosecution to the special statute." *People v. Bagby,* 734 P.2d 1059, 1061 (Colo. 1987); *accord Smith,* 938 P.2d at 115. But we may not conclude that the General Assembly intended to supplant the more general offense by creating a more specific offense unless such intent is "clear." *Smith,* 938 P.2d at 115, *see also Hucal v. People,* 176 Colo. 529, 536, 493 P.2d 23, 27 (1971).

¶ 12 Beginning in *Bagby,* Colorado appellate courts have considered three factors in deciding whether the General Assembly has clearly intended to limit prosecution to a more specific statute: (1) "whether the [more specific] statute invokes the full extent of the state's police powers; (2) whether the specific statute is part of an act creating a comprehensive and thorough regulatory scheme to control all aspects of a substantive area; and (3) whether the act carefully defines different types of offenses in detail." *Smith,* 938 P.2d at 116; *accord, e.g., Warner,* 930 P.2d at 568; *Bagby,* 734 P.2d at 1062; *People v. Tow,* 992 P.2d 665, 667 (Colo. App. 1999).

¶ 13 This mode of analysis presents an issue of statutory interpretation. *See State v. Nieto,* 993 P.2d 493, 502 (Colo. 2000) (" 'Legislative intent is the polestar of statu-

tory construction.' " (quoting *Schubert v. People,* 698 P.2d 788, 793 (Colo. 1985))). We review an issue of statutory interpretation de novo. *People v. McKimmy,* 2014 CO 76, ¶ 19, 338 P.3d 333; *Finney v. People,* 2014 CO 38, ¶ 12, 325 P.3d 1044.

### 2. Analysis

#### a. Police Power

¶ 14 In *Bagby,* the court construed the Liquor Code, as then constituted, which stated that it was adopted as " 'an exercise of the police powers of the state for the protection of the economic and social welfare and the health, peace and morals of the people of the state.' " 734 P.2d at 1062 (quoting § 12–47–102(1), C.R.S. 1985). The court viewed this "broad" language as "suggest[ing] that in adopting specific penal provisions in the Liquor Code, the General Assembly exercised the full police power of the state and considered the full range of possible sanctions in selecting those most appropriate for violations of the Liquor Code." *Id.*

¶ 15 In the years since, our appellate courts have distinguished between such broad language and language indicating a more limited consideration of potential penalties. For instance, in *Warner,* the supreme court relied on a similarly broad statement of purpose in the Limited Gaming Act of 1991 in determining that the General Assembly had invoked "the full extent of the state's police powers." *Warner,* 930 P.2d at 568 (citing § 12–47.1–102(c), C.R.S. 1991, which provided that limited gaming must be controlled "to protect the public health, safety, good order, and the general welfare of the inhabitants of the state to foster the stability and success of limited gaming and to preserve the economy and policies of free competition of the state of Colorado"). In contrast, divisions of the court of appeals have held that more specific statements of purpose did not invoke the state's police power to a similar extent, and therefore did not indicate a legislative intent that a person be charged only under a more specific provision. *See People v. Stansberry,* 83 P.3d 1188, 1190 (Colo. App. 2003) (statement of purpose for article 3 of title 42 (pertaining to registration

and taxation of motor vehicles) indicated that the General Assembly's primary purpose in enacting the article was to assess and collect motor vehicle taxes); *Toui*, 992 P.2d at 667–68 (statement of purpose for the Uniform Safety Code said that the purpose of the article was to alleviate conflicts and achieve uniformity among traffic laws).

¶ 16 Section 8–70–102, C.R.S. 2014, is the Act's legislative declaration of purpose. It states:

> As a guide to the interpretation and application of this article, the public policy of this state is declared to be as follows: Economic insecurity due to unemployment is a serious menace to the health, morals, and welfare of the people of this state. Involuntary unemployment is therefore a subject of general interest and concern which requires appropriate action by the general assembly to prevent its spread and to lighten its burden which now so often falls with crushing force upon the unemployed worker and his family. The achievement of social security requires protection against this greatest hazard of our economic life. This can be provided by encouraging employers to provide more stable employment and by the systematic accumulation of funds during periods of employment to provide benefits for periods of unemployment, thus maintaining purchasing power and limiting the serious social consequences of poor relief assistance. The general assembly, therefore, declares that in its considered judgment the public good and the general welfare of the citizens of this state require the enactment of this measure, under the police powers of the state, for the compulsory setting aside of unemployment reserves to be used for the benefit of persons unemployed through no fault of their own.

¶ 17 This declaration expressly invokes the state's police power, but does so in a more limited way than the statutes at issue in *Bagby* and *Warner*. It qualifies the invocation of the police power, saying that the measure is necessary to provide for "the compulsory setting aside of unemployment reserves to be used for the benefit of persons unemployed through no fault of their own."

¶ 18 Thus, the legislative declaration in section 8–70–102 falls in between those in which the General Assembly has invoked the *full* extent of the state's police power and those in which it has instead articulated a more limited purpose without explicit reference to the police power. It is, however, closer to the former than to the latter, and we take that into account.

### b. Comprehensive and Thorough Regulatory Scheme

¶ 19 Section 8–81–101(1)(a) is part of a comprehensive and thorough regulatory scheme. The Act regulates all aspects of the unemployment compensation system in Colorado. *Cf. Warner*, 930 P.2d at 568 (Limited Gaming Act controls "all aspects of limited stakes gambling in Colorado"); *Bagby*, 734 P.2d at 1062 (structure of the Liquor Code indicates "a thorough legislative consideration of all aspects of the licensing process"); *Stansberry*, 83 P.3d at 1190 (motor vehicle registration and taxation statutes created "a comprehensive and thorough regulatory scheme").

### c. Detailed Definition of Offenses

¶ 20 It is on this element that defendant's position ultimately founders. Section 8–81–101 is the only penalty provision in the Act, and it creates only three criminal offenses, all misdemeanors. They are, generally stated: (1) a person making a false statement of material fact, with intent to defraud, to obtain or increase unemployment compensation benefits, section 8–81–101(1)(a); (2) an employer making a false statement either to cause a person to receive benefits or to prevent an individual from receiving benefits, section 8–81–101(2); and (3) a person "willfully violat[ing] any provision" of the Act, "the violation of which is made unlawful or the observance of which is required under the terms of" the Act "and for which a penalty is neither prescribed in this article nor provided by any other applicable statute," section 8–81–101(3). The statute establishes civil monetary penalties for certain violations. § 8–81–101(1)(b), (1)(c), (4)(a)(II).

¶ 21 Section 8–81–101 does not address all criminal activity which may occur in the unemployment compensation context. Instead, it addresses only certain specific acts which may occur in the context of an application for benefits. *Cf. Stansberry,* 83 P.3d at 1190 (statutes pertaining to motor vehicle registration and taxation "do[ ] not contain a complete and exclusive list of offenses and sanctions flowing from acts committed in the course of unlawfully evading motor vehicle taxes"); *Tow,* 992 P.2d at 668 ("[T]he Uniform Safety Code contains no provisions regulating many forms of intentional conduct in the operation of motor vehicles.").

¶ 22 This stands in contrast to the Liquor Code, as interpreted by the court in *Bagby,* which carefully defined many different types of offenses "with particularized references to specific provisions of the Colorado Criminal Code" (including felonies) and which expressly provided that some conduct prohibited by the Liquor Code should be prosecuted under particular sections of the Criminal Code. 734 P.2d at 1062. The latter aspect—expressly designating very few violations as matters to be prosecuted under the Criminal Code—"strongly indicates a legislative determination that all other violations of the Liquor Code shall be prosecuted as provided by the penal provisions of the Liquor Code itself." *Id.*

¶ 23 The limits of section 8–81–101 also stand in contrast to the provisions of the Limited Gaming Act considered in *Warner.* That enactment defined criminal offenses "in extraordinary detail" and reproduced them "verbatim in the Criminal Code." *Warner,* 930 P.2d at 568.

#### d. Conclusion

¶ 24 Considering the relevant factors, we conclude that the General Assembly did not intend to preclude prosecution for forgery where the conduct underlying the charge also arguably violates section 8–81–101(1)(a) of the Act. Therefore, the People had the discretion to charge defendant with the more serious offense. *See People v. Chesnick,* 709 P.2d 66, 66 (Colo. App. 1985) (holding, without analysis, that there was no legislative intent to limit charges involving receipt of

unemployment compensation benefits to charges under section 8–81–101(1)(a); proper to charge the defendant with felony theft).

### B. Equal Protection

¶ 25 Defendant contends that the forgery statute, section 18–5–102, fails to provide an intelligible standard by which to differentiate the conduct proscribed thereunder from that proscribed by section 8–81–101(1)(a), and therefore charging him under the forgery statute violated his constitutional right to equal protection of the laws. We reject that contention.

#### 1. Applicable Law and Standard of Review

¶ 26 The constitutional guarantee of equal protection of the laws "prohibits punishing identical criminal conduct with disparate penalties." *People v. Blue,* 253 P.3d 1273, 1279 (Colo. App. 2011) (citing *People v. Young,* 859 P.2d 814, 816 (Colo. 1993)); *see People v. Calvaresi,* 188 Colo. 277, 282, 534 P.2d 316, 318 (1975) ("A statute which prescribes different degrees of punishment for the same acts committed under like circumstances by persons in like situations is violative of a person's right to equal protection of the laws."). Similarly, "[s]tatutes prescribing different sanctions for what ostensibly might be different acts, but offering no rational standard for distinguishing such different acts for purposes of disparate punishment, also contravenes the equal protections guaranties of Colorado's constitution." *People v. Wilhelm,* 676 P.2d 702, 704 (Colo. 1984). Therefore, like conduct may be punishable under different statutes only if the statutes are based on "differences that are both real in fact and reasonably related to the purposes of the legislation...." *People v. Prieto,* 124 P.3d 842, 845 (Colo. App. 2005); *accord Calvaresi,* 188 Colo. at 281–82, 534 P.2d at 318 ("There must be substantial differences having a reasonable relationship to the persons involved and the public purpose to be achieved.").

¶ 27 To determine whether statutes proscribe identical conduct, we look not to the conduct of a particular defendant in a particular case, but to the elements of the

offenses. *People v. Stewart*, 55 P.3d 107, 115 (Colo. 2002); *Blue*, 253 P.3d at 1279; *Prieto*, 124 P.3d at 845. If the elements differ qualitatively (and not merely semantically), such that one statute requires proof of an element that the other does not, there is no equal protection violation. *People v. Calvaresi*, 198 Colo. 321, 326, 600 P.2d 57, 60 (1979); *Blue*, 253 P.3d at 1279; *Prieto*, 124 P.3d at 845; *People v. Sharp*, 104 P.3d 252, 255 (Colo. App. 2004).

¶ 28 Whether multiple statutes prohibit identical conduct under the elements comparison test presents an issue of statutory interpretation. As noted, we review an issue of statutory interpretation de novo. *People v. Van De Weghe*, 2012 COA 204, ¶ 7, 312 P.3d 231.

## 2. Analysis

¶ 29 The texts of the relevant statutes are set forth above. As relevant in this case, the statutory elements of the forgery charge against defendant were that (1) the defendant; (2) with intent to defraud; (3) falsely completed a written instrument; (4) which was or was purported to be, or which was calculated to become or to represent if completed; (5) a written instrument officially issued or created by a government agency.

¶ 30 Falsely completing is defined by section 18-5-101(3)(a), (b), C.R.S. 2014. Those subsections provide:

(3) To "falsely complete" a written instrument means:

(a) To transform an incomplete written instrument into a complete one by adding, inserting, or changing matter without the authority of anyone entitled to grant that authority, so that the complete written instrument falsely appears or purports to be in all respects an authentic creation of or fully authorized by its ostensible maker; or

(b) To transform an incomplete written instrument into a complete one by adding or inserting materially false information or adding or inserting a materially false statement. A materially false statement is a false assertion that affects the action, conduct, or decision of the person who re-

ceives or is intended to receive the asserted information in a manner that directly or indirectly benefits the person making the assertion.

¶ 31 Section 8-81-101(1)(a) requires proof that (1) the defendant; (2) (a) made a false statement or representation of material fact knowing it was false or (b) knowingly failed to disclose a material fact; (3) with intent to defraud; (4) thereby obtaining or increasing unemployment compensation benefits.

¶ 32 The forgery statute applicable here includes elements that section 8-81-101(1)(a) does not. It requires completion of a written instrument; it requires that the written instrument be officially issued or created by a government agency; it requires that the materially false information provided by the defendant render the written instrument legally operable; and it requires that the defendant benefit by his conduct, directly or indirectly. These differences are real and not merely semantic, and they describe conduct—conduct which differs from that prohibited by section 8-81-101(1)(a)—in a reasonably intelligible way. Accordingly, the People could charge the defendant with forgery without violating his right to equal protection of the laws. *Cf. Chesnick*, 709 P.2d at 67 (because conduct prohibited by the general felony theft statute is distinguishable from conduct prohibited by section 8-81-101(1)(a), charging the defendant under the former did not violate his right to equal protection of the laws).

## C. Restitution

¶ 33 Defendant contends, the People agree, and we concur that the district court should not have assessed the fifty percent penalty provided for in section 8-81-101(4)(a)(II) as part of defendant's restitution obligation. *People v. Russell*, 2013 COA 121, ¶ 16, 310 P.3d 284; *People v. Welliver*, 2012 COA 44, ¶ 15, 317 P.3d 1192.

## III. Conclusion

¶ 34 We affirm the judgment of conviction. We vacate that portion of defendant's sentence which includes the statutory penalty as restitution, and remand the case to the dis-

trict court to correct the·mittimus to reflect the proper amount of restitution.

JUDGE FOX and JUDGE ROY * concur.