Opinions of the Colorado Supreme Court are available to the
public and can be accessed through the Judicial Branch's homepage at
http://www.courts.state.co.us.  Opinions are also posted on the
Colorado Bar Association's homepage at http://www.cobar.org.

ADVANCE SHEET HEADNOTE
October 15, 2019

**2019 CO 86**

**No. 18SC225, *People v. Rojas*—Statutory Interpretation—Plain Language—Theft.**

In this opinion, the supreme court considers whether an individual who receives food stamp benefits to which she is not legally entitled is properly prosecuted under section 18-4-401, C.R.S. (2019), or section 26-2-305(1)(a), C.R.S. (2019).  The supreme court holds that, based on the plain language of section 26-2-305(1)(a), the legislature did not create a separate crime when it enacted that section.  Thus, when an individual violates section 26-2-305(1)(a), he or she may properly be prosecuted under the general theft statute, section 18-4-401.  Accordingly, the supreme court reverses the court of appeals' decision and remands the case with instructions to return the case to the trial court to reinstate the judgment of conviction.

## The Supreme Court of the State of Colorado
2 East 14th Avenue • Denver, Colorado 80203

## 2019 CO 86

### Supreme Court Case No. 18SC225
*Certiorari to the Colorado Court of Appeals*
Court of Appeals Case No. 15CA126

### Petitioner:

The People of the State of Colorado,

v.

### Respondent:

Brooke E. Rojas.

### Judgment Reversed
*en banc*
October 15, 2019

**Attorneys for Petitioner:**
Philip J. Weiser, Attorney General
Kevin E. McReynolds, Assistant Attorney General
    *Denver, Colorado*

**Attorneys for Respondent:**
Megan A. Ring, Public Defender
Rachel K. Mercer, Deputy Public Defender
    *Denver, Colorado*

**JUSTICE HOOD** delivered the Opinion of the Court.

¶1　Brooke E. Rojas received food stamp benefits to which she was not legally entitled. The prosecution charged her with two counts of theft under the general theft statute, section 18-4-401(1)(a), C.R.S. (2019). Rojas moved to dismiss these charges, arguing that she could only be prosecuted under section 26-2-305(1)(a), C.R.S. (2019), because it created the specific crime of theft of food stamps. The trial court denied the motion, and a jury convicted Rojas of the two general theft counts.

¶2　Rojas contends that the trial court erred by denying the motion to dismiss because section 26-2-305(1)(a) abrogated the general theft statute in food stamp benefit cases. A split division of the court of appeals agreed with her.

¶3　We disagree with Rojas and the division majority. Based on the statute's plain language, we hold that the legislature didn't create a crime separate from general theft by enacting section 26-2-305(1)(a).

## I. Facts and Procedural History

¶4　The relevant facts unfolded over the course of a year. In August 2012, Rojas applied for food stamp benefits from the Larimer County Department of Human Services ("the Department") because she had no income. She received a recertification letter in December, which she submitted in mid-January, stating that she still had no income. And technically that was true. Rojas had started a new job on January 1, but she hadn't yet received a paycheck when she submitted

2

her recertification letter. Consequently, Rojas and her family received $1,052 per month in food stamp benefits even though they were ineligible.

¶5 Fast forward to August 2013 when Rojas reapplied for food stamp benefits. Although she was still working, she reported that she had no income. When the Department checked Rojas's employment status, it learned that she was not only employed, but making some $55,000 a year (to help support a family of seven). After some more digging, the Department determined that Rojas had received $5,632 in benefits to which she was not legally entitled.

¶6 The prosecution charged Rojas with two counts of theft (for two time periods) under section 18-4-401(1)(a), the general theft statute. Rojas moved to dismiss the charges, asserting that she could only be prosecuted under section 26-2-305(1)(a) because it created the specific crime of theft of food stamps. The court denied the motion, and a jury found Rojas guilty of the two general theft charges. (Rojas had requested that the jury also be instructed on the lesser non-included offense of fraud in connection with obtaining food stamps. The jury convicted her of that, too.)

¶7 Rojas appealed. Applying the factors from *People v. Bagby*, 734 P.2d 1059, 1062 (Colo. 1987), a split division of the court of appeals concluded that "the General Assembly intended section 26-2-305 to supplant the general theft statute." *See People v. Rojas*, 2018 COA 20, ¶ 38, __ P.3d __. It then held that "the prosecution

was barred from prosecuting Rojas under the general theft statute" and vacated her theft convictions. *Id.*

¶8 Judge Richman dissented. He concluded that section 26-2-305(1)(a) didn't create a separate crime for theft of food stamps. He noted that "[n]either the title nor the text of the statute names a separate crime." *Rojas*, ¶ 46 (Richman, J., dissenting). He cited the statute's legislative history for further support of this interpretation. *Id.* at ¶¶ 47–48. Finally, he engaged in a *Bagby* analysis, concluding that the first factor — invocation of the full extent of the state's police powers — had not been met. *Id.* at ¶¶ 51–53.

¶9 We granted the People's petition for certiorari review.[1]

## II. Analysis

¶10 After briefly discussing the standard of review, we interpret section 26-2-305(1)(a). We evaluate whether the legislature intended to create a separate crime by enacting this statute. We conclude that it did not. Finally, we explain that a *Bagby* analysis is unnecessary because it's a tool that courts use to determine

---

[1] We granted certiorari to review the following issue:

1. Whether the court of appeals erred by concluding section 26-2-305 of the Public Assistance Act created an independent criminal offense for food stamp theft that abrogated the State's authority to prosecute under the general theft statute.

legislative intent when a statute is ambiguous, and here we conclude that the intent is clear from section 26-2-305(1)(a)'s plain language.

## A. Standard of Review

¶11 We review de novo issues of statutory interpretation, such as those here. *McCoy v. People*, 2019 CO 44, ¶ 37, 442 P.3d 379, 389. In interpreting statutes, our primary goal is to ascertain and give effect to the legislature's intent. *Id.* To do so, we look first to the statute's plain language, giving words and phrases their plain and ordinary meanings. *Id.* We may not add or subtract words from the statute, but instead read the words and phrases in context, construing them according to the rules of grammar and common usage. *Id.* at ¶¶ 37–38, 442 P.3d at 389; *People v. Diaz*, 2015 CO 28, ¶ 12, 347 P.3d 621, 624.

¶12 We also read the legislative scheme as a whole, giving consistent, harmonious, and sensible effect to all of its parts and avoiding an interpretation that would render any words or phrases superfluous or lead to an illogical or absurd result. *McCoy*, ¶ 38, 442 P.3d at 389. If the statute is clear and unambiguous, we need not resort to further aids of construction. *Id.*

## B. Under the Plain Language, Section 26-2-305(1)(a) Does Not Create a Separate Crime

¶13 From our perspective, the crucial language of section 26-2-305(1)(a) is "commits the crime of theft." Viewed in context, we see that the legislature has provided in relevant part that

[a]ny person who obtains . . . [food stamp benefits to which they are not legally entitled] . . . by means of a willfully false statement or representation . . . with intent to defeat the purposes of the food stamp program *commits the crime of theft*, which crime shall be classified in accordance with section 18-4-401(2), C.R.S., and which crime shall be punished as provided in section 18-1.3-401, C.R.S., if the crime is classified as a felony, or section 18-1.3-501, C.R.S., if the crime is classified as a misdemeanor. Any person violating the provisions of this subsection (1) is disqualified from participation in the food stamp program for one year for a first offense, two years for a second offense, and permanently for a third or subsequent offense.

§ 26-2-305(1)(a) (emphasis added).

¶14 Based on the ordinary meaning of the phrase "commits the crime of theft," we must assume the legislature meant what it said—when an individual engages in the conduct outlined, he or she commits the crime of theft.

¶15 The legislature has used similar, but more specific, language in other statutes to create a separate crime. For example, section 26-2-306, C.R.S. (2019), creates the crime of trafficking in food stamps. It provides that "[a]ny person who obtains, uses, transfers, or disposes of food stamps in the manner specified in [this section] *commits the offense of trafficking in food stamps*." § 26-2-306(1) (emphasis added); *see also, e.g.*, § 18-4-408(1), C.R.S. (2019) ("Any person who . . . steals or discloses to an unauthorized person a trade secret . . . *commits theft of a trade secret*." (emphasis added)).

¶16 Thus, the legislature clearly knows how to use the phrase "commits a [crime]" to create a separate crime when it intends to do so. It didn't do that in

section 26-2-305(1)(a).  For example, the legislature didn't say that an individual commits the crime of food stamp fraud or theft of food stamps or any other food-stamp-specific crime when he or she engages in the prohibited conduct.  And we may not add those words here.

¶17    So, we're done, right?  Not quite.  Rojas posits several arguments premised on the surrounding statutory language and on another statute that seem to suggest that theft and theft of food stamps are separate crimes.  We address each.

## C. Rojas's Supplemental Arguments Based on the Statute's Plain Language

### 1. The Classification Language

¶18    Rojas contends that our interpretation ignores the statute's subsequent language: "which crime shall be *classified* in accordance with section 18-4-401(2)."  § 26-2-305(1)(a) (emphasis added).  She emphasizes that this reference is only to subsection (2), which provides the offense classifications for theft.  The reference is not to subsection (1), which provides the elements of the crime of theft. Thus, Rojas concludes that the legislature intended only to incorporate the classification scheme and not the crime itself.

¶19    We reject this argument because it would render superfluous the plain language that someone who violates section 26-2-305(1)(a) "commits the crime of theft."  There would be no need to refer to the crime of general theft if the

legislature were creating a separate crime—the legislature could have included only the classification reference if that is all it intended to incorporate.

¶20 Moreover, the reference to classification seems to undercut Rojas's argument. Consider that, unlike other statutes creating a separate crime, section 26-2-305(1)(a) contains no independent classification or criminal punishment schemes. Again, by way of example, section 26-2-306 provides a detailed classification scheme based on the value of the food stamps trafficked. § 26-2-306(2), (3); *see also* § 18-4-408(3)(a) (distinguishing between felony and misdemeanor theft of trade secrets). These classification and punishment schemes are independent of those found in the general criminal statutes. Thus, when paired with the plain language identifying the crime committed, they provide a separate mode of prosecution and punishment.

¶21 By contrast, in section 26-2-305(1)(a), the legislature referred to the existing classification and punishment schemes for general theft. Section 26-2-305(1)(a) independently provides only administrative penalties for violations of the food stamp benefits program. These administrative penalties do not a separate crime make. *Cf. People v. Clanton*, 2015 COA 8, ¶ 33, 361 P.3d 1056, 1062 (declining to apply the statutory administrative penalties to the defendant's criminal restitution payment); *People v. Russell*, 2013 COA 121, ¶¶ 10–11, 310 P.3d 284, 286 (Because "[t]he purpose of the penalty is to enforce compliance with the provisions of the

8

[statute]," it should not be applied as part of a criminal punishment unless it satisfies the criminal standard for "natural and probable consequence[s].").

## 2. Separate Elements

¶22 Rojas also argues that because the general theft statute and section 26-2-305(1)(a) set out different elements, they must create different offenses. Again, we are not persuaded.

¶23 Let's compare the "elements." The relevant statutory provisions provide that a person commits theft when he or she:

| Knowingly obtains | Obtains |
|---|---|
| Anything of value of another | Food stamp benefits |
| By deception | By means of a willfully false statement |
| With the intent to permanently deprive the other person of the use or benefit of that thing of value | With the intent to defeat the purposes of the food stamp program |

§ 18-4-401(1)(a) (left column); § 26-2-305(1)(a) (right column). Substantively, these statutes cover the same ground; section 26-2-305(1)(a) simply describes them in terms relevant to food stamps. Furthermore, we agree with Judge Richman in his dissent that,

> [b]y incorporating the theft statute, the effect of section 26-2-305(1)(a) is to specify that food stamps are a thing of value, akin to dollars, and that although obtained from a government agency that issues but does not "own" the food stamps, the agency nonetheless has a proprietary interest in the food stamps, as provided in 18-4-401(1.5).

9

*Rojas*, ¶ 49 (Richman, J., dissenting).

¶24 Thus, reading section 26-2-305(1)(a) as a whole, it appears the legislature chose to (1) describe a means by which general theft can be committed in the food stamp context and (2) provide a clear reference to the relevant classification and criminal punishment schemes applicable to that crime. *See People v. Cooper*, 27 P.3d 348, 354 (Colo. 2001) ("Our analysis of any part of a statute is based on the assumption that the General Assembly intended that the entire statute be effective."). It didn't create a separate crime.

### 3. Separate References

¶25 Lastly, Rojas directs us to section 18-1-202(7), C.R.S. (2019), to support her argument that the legislature intended to create a separate crime. Section 18-1-202(7)(a) describes the proper venue when multiple crimes are part of the same criminal episode. It then provides that when a person commits one of the offenses listed in subsection (b) two or more times within a six-month period, those offenses may be considered part of the same criminal episode. § 18-1-202(7)(b). As relevant here, it lists both "[t]heft, as *defined* in section 18-4-401" and "[f]raud in connection with obtaining food stamps, as *described* in section 26-2-305." § 18-1-202(7)(b)(II)(A), (T) (emphases added). Rojas argues that listing these two offenses separately reflects the legislature's intent to create separate crimes.

¶26 While this argument seems alluring at first glance, it does not hold up on closer examination. We assume the legislature chose two different ways of referring to the offenses' primary statutes—"defined" versus "described"—intentionally. And when we read the primary statute referred to in each of the listed offenses, the "defined" offenses specifically identify an independent offense—for example, commits the crime of criminal mischief, commits cybercrime, and commits theft of farm products. *See* § 18-1-202(7)(b)(II)(D), (K), (R); § 18-4-501, C.R.S. (2019); § 18-5.5-102, C.R.S. (2019); § 35-37-121, C.R.S. (2019). Conversely, the primary statutes referred to in the "described" offenses all provide that an individual "commits the crime of theft." *See* § 18-1-202(7)(b)(II)(Q), (S), (T); § 6-1-409, C.R.S. (2019); § 26-1-127(1), C.R.S. (2019); § 26-2-305(1)(a). *But see* § 18-1-202(7)(b)(II)(U) (listing "[a]n offense as described in part 1 of article 5 of this title," which refers to an entire article defining various fraud-related offenses). Thus, we disagree that this statute supports a legislative intent to create a separate crime in section 26-2-305(1)(a).

## D. *Bagby*

¶27 We decline to analyze this statute under *Bagby* because that analysis is unnecessary. Courts employ the *Bagby* factors when discerning whether the legislature, by enacting a specific criminal statute, intended to preclude prosecution of the same conduct under a more general criminal statute. *Bagby*,

11

734 P.2d at 1061–62. In other words, the *Bagby* factors serve as a tool to determine legislative intent when that intent is unclear. Here, however, the legislature's intent is clear from the statute's plain language. Thus, a *Bagby* analysis is unnecessary.

## III. Conclusion

¶28 The legislature didn't create a separate crime by enacting section 26-2-305(1)(a). We therefore reverse the court of appeals' decision and remand with instructions to return the case to the trial court to reinstate the judgment of conviction.