488 P.3d 1091
In Re Lindsay WINNINGER, an individual; and Sports Rehab Consulting LLC, a Colorado limited liability company, Plaintiffs,
v.Doris KIRCHNER, an individual; and Vail Clinic, Inc. d/b/a Vail Valley Medical Center, a Colorado nonprofit corporation, Defendants,andVail Clinic, Inc. d/b/a Vail Valley Medical Center, a Colorado nonprofit corporation, Third-Party Plaintiff,
v.David J. Cimino, an individual, Third-Party Defendant.
Supreme Court Case No. 21SA87 Supreme Court of Colorado.
June 14, 2021
Attorneys for Plaintiffs: Fahrenholtz & Wiens LLC, Jesse Wiens, Avon, Colorado, Sonya R. Braunschweig, Minneapolis, Minnesota, Alan L. Kildow, Burnsville, Minnesota
Attorneys for Defendant Doris Kirchner and Defendant/Third-Party Plaintiff Vail Clinic, Inc.: Davis Graham & Stubbs LLP, Janet Savage, Jacqueline V. Roeder, Daniel Richards, Denver, Colorado
Attorneys for Defendant Doris Kirchner: Reilly LLP, John M. McHugh, Denver, Colorado
Attorneys for Third-Party Defendant David Cimino: The Madden Law Firm, John W. Madden, III, Denver, Colorado
En Banc
JUSTICE GABRIEL delivered the Opinion of the Court. ¶1 Upon consideration of a C.A.R. 21 petition filed by plaintiffs, Lindsay Winninger and Sports Rehab Consulting LLC (collectively, "Winninger"), and joined by third-party defendant, David Cimino, we issued a rule to show cause directing defendants, Doris Kirchner and Vail Clinic, Inc. (collectively, "Vail Clinic"), to explain why:
(1) the term "theft," as that term is used in section 18-4-405, C.R.S. (2020), encompasses the theft of medical records or medical information under section 18-4-412(1), C.R.S. (2020), such that Respondents have standing to pursue their civil theft counterclaim in this case and (2) Respondents' civil theft counterclaim is not barred by section 18-4-412(5).
¶2 We now conclude that the term "theft," as that term is used in section 18-4-405, refers to "theft" within the meaning of section 18-4-401, C.R.S. (2020), and therefore does not encompass the theft of medical records or medical information under section 18-4-412(1).
¶3 In light of this determination, we make the rule to show cause absolute, and we need not address whether Vail Clinic's civil theft claim is also barred under section 18-4-412(5).
I. Facts and Procedural History
¶4 For reasons that are not abundantly clear from the record before us, the dispute below, which began as a seemingly straightforward claim for defamation and tortious interference with contract, has ballooned into a massive litigation, comprising twenty-seven claims, five counterclaims, six third-party claims, and over 1,100 filings in the district court. The issue now before us involves just one of Vail Clinic's counter- and third-party claims, and we thus limit our recitation of the facts to those necessary to understand the narrow legal question presented.
¶5 In 2004, Rehabilitation & Performance Center at Vail, LLC ("RPC-Vail") and Vail Clinic entered into a services agreement that required RPC-Vail to operate a physical therapy clinic that did business under the trade name Howard Head Sports Medicine ("Howard Head"). Under the services agreement, Vail Clinic acted as the billing and collection entity for Howard Head's services. This arrangement lasted until November 1, 2012, when Vail Clinic terminated the services agreement and took over operation of the Howard Head clinic.
¶6 Winninger and Cimino are physical therapists who, in the years implicated by these proceedings, were based primarily in Vail, Colorado. From 2008 or 2009 until 2012, Winninger worked for RPC-Vail at Howard Head, and from 2012 until 2015, Cimino did as well.
¶7 In May 2012, Winninger left Howard Head and joined the U.S. Women's Alpine Ski Team as its head physical therapist. Then, two years later, she founded Sports Rehab Consulting ("Sports Rehab"), and in 2015, she opened physical therapy clinics in both Denver and Vail. Sports Rehab hired Cimino as its first employee at the Vail location, and The Steadman Clinic, a well-known Vail orthopedic clinic that is not a party to this dispute, initially served as a significant source of referrals for Sports Rehab. Winninger anticipated that such referrals would increase, given that she had a pre-existing relationship with The Steadman Clinic and that she and her staff had expanded the breadth of services that they could offer.
¶8 As pertinent here, when both Winninger and Cimino left Howard Head, they each copied and took with them certain electronic educational, training, protocol, licensing, and personal files that were located either on their computer desktops or on RPC-Vail's shared drive. (The confidential and proprietary nature of these files has been hotly contested by the parties; nothing in this opinion should be read to express any view on that dispute.) In copying these files to portable USB drives, Winninger and Cimino also downloaded certain statutorily protected health information stored on RPC-Vail's servers, although both contend that they did so inadvertently and unknowingly and never used that information.
¶9 According to Winninger, Vail Clinic subsequently began making defamatory statements about her and Sports Rehab to people at The Steadman Clinic and elsewhere. Specifically, Winninger alleged that Vail Clinic informed Steadman physicians and executives that Winninger had stolen thousands of medical files from Vail Clinic and purportedly showed a draft complaint —which was never filed — to Steadman executives, in which Vail Clinic accused Winninger of such thefts. Winninger contends that these statements were false and were made with the intent to destroy her personal and professional reputation and to force her out of business. Allegedly as a result of Vail Clinic's claimed actions, the referrals from The Steadman Clinic came to an abrupt halt, and Sports Rehab shuttered its Vail clinic in September 2018.
¶10 Winninger then brought this lawsuit, alleging numerous separate claims of defamation, as well as claims for tortious interference with contract and with current and prospective business relationships. Vail Clinic responded by filing counterclaims against Winninger and a third-party complaint against Cimino. As pertinent here, Vail Clinic's fourth claim for relief asserts a counterclaim against Winninger and a third-party claim against Cimino for civil theft, pursuant to section 18-4-405.
¶11 In its civil theft claim, Vail Clinic alleges that Winninger and Cimino "knowingly obtained or exercised control over [Vail Clinic's] property, including [Vail Clinic] files containing protected health information (‘PHI’) and confidential and proprietary trade-secret information, without authorization." Although the claim does not mention section 18-4-412, which specifically concerns the theft of medical records or medical information, following discovery, Vail Clinic filed a motion for summary judgment in which it asserted that, to the extent its civil theft claim concerned allegedly stolen medical records or medical information, that claim was based on section 18-4-412.
¶12 Winninger then filed a motion to dismiss the civil theft claim under C.R.C.P. 12(b)(1) for lack of jurisdiction, arguing that Vail Clinic lacked standing to pursue that claim. In support of this motion, Winninger contended that the claim amounted to a civil theft claim for theft of medical records or medical information brought pursuant to a criminal statute, section 18-4-412, and that the legislature had not authorized a civil cause of action for a violation of that statute. Winninger further argued that the legislature intended for the elements of a civil theft claim brought pursuant to section 18-4-405 to be defined by the general criminal theft statute, section 18-4-401. Accordingly, in her view, proving the elements of section 18-4-412 would not provide a basis for a civil claim under section 18-4-405. (This distinction matters because Winninger asserts that to establish a civil theft claim, a claimant must show that the defendant knowingly obtained or exercised control over a thing of value of another with the intent to permanently deprive the victim of that thing of value. Vail Clinic, in contrast, contends that section 18-4-412 creates a strict liability offense and that a claimant need only show that the defendant voluntarily committed the alleged acts.)
¶13 Vail Clinic responded to Winninger's motion, contending that it had standing to pursue a civil theft claim because theft of medical records or medical information under section 18-4-412 is a predicate act for which Vail Clinic can maintain a private right of action under section 18-4-405. In so arguing, Vail Clinic contended that section 18-4-405, which allows an aggrieved owner to file a civil theft claim against the taker or possessor of "[a]ll property obtained by theft, robbery, or burglary," encompasses any of the statutory crimes of theft, including the theft of medical records or medical information.
¶14 The district court ultimately agreed with Vail Clinic and, in a written order, denied Winninger's motion to dismiss. In so ruling, the district court stated that section 18-4-405 indisputably "permits a private cause of action for theft" and it was "beyond any reasonable dispute that C.R.S. § 18-4-412 is a theft crime for medical records or medical information." In light of the foregoing, the court concluded that "if [Vail Clinic is] able to establish that [Winninger and Cimino] violated C.R.[S]. § 18-4-412 [it] may recover pursuant to C.R.S. § 18-4-405."
¶15 Winninger and Cimino then petitioned this court for relief under C.A.R. 21, and we issued a rule to show cause. II. Analysis
¶16 We begin by addressing our jurisdiction in this case and the applicable standard of review and principles of statutory interpretation. We then construe section 18-4-405 to determine whether the term "theft" within the meaning of that statute encompasses the theft of medical records or medical information under section 18-4-412(1).
A. Jurisdiction ¶17 The exercise of our original jurisdiction under C.A.R. 21 rests within our sole discretion. Accetta v. Brooks Towers Residences Condo. Ass'n, 2019 CO 11, ¶ 11, 434 P.3d 600, 602. "An original proceeding under C.A.R. 21 is an extraordinary remedy that is limited in both its purpose and availability." Id. We have exercised our jurisdiction under C.A.R. 21 to hear matters that raise issues of first impression, that are of significant public importance, and that present novel questions of statutory interpretation. Id. We have also exercised our discretion under C.A.R. 21 to consider whether a district court acted without jurisdiction and when an appellate remedy would be inadequate. Chessin v. Off. of Att'y Regul. Couns., 2020 CO 9, ¶ 8, 458 P.3d 888, 890. ¶18 The questions that Winninger asks us to resolve here, which involve the interpretation and interplay of the civil theft statute in relation to the theft of medical records or medical information, is one of first impression for this court. Moreover, the issue is one of significant public importance because it potentially affects a wide array of civil theft claims throughout the state of Colorado (and such claims can dramatically alter the tenor of a case, given that the statute allows a claimant to recover treble damages and attorney fees). Finally, Winninger raises an issue of standing that implicates the district court's jurisdiction over the civil theft claim at issue.
¶19 We therefore conclude that the exercise of our original jurisdiction is warranted in this case.
B. Standard of Review and Principles of Statutory Construction ¶20 We review questions of statutory interpretation de novo. Dep't of Revenue v. Agilent Techs., Inc., 2019 CO 41, ¶ 16, 441 P.3d 1012, 1016. In construing a statute, our goal is to effectuate the General Assembly's intent. Id. To that end, we consider the entire statutory scheme in order to give consistent, harmonious, and sensible effect to all of its parts, and we must apply words and phrases in accord with their plain and ordinary meanings. Id. We also avoid constructions that would render any words or phrases superfluous or that would lead to illogical or absurd results. Id. If the statutory language is clear, then we will apply it as written. Id.
C. Section 18-4-405
¶21 Section 18-4-405 provides, in part:
All property obtained by theft, robbery, or burglary shall be restored to the owner, and no sale, whether in good faith on the part of the purchaser or not, shall divest the owner of his right to such property. The owner may maintain an action not only against the taker thereof but also against any person in whose possession he finds the property. In any such action, the owner may recover two hundred dollars or three times the amount of the actual damages sustained by him, whichever is greater, and may also recover costs of the action and reasonable attorney fees ....
¶22 In Itin v. Ungar, 17 P.3d 129, 133 (Colo. 2000), we indicated that the civil theft statute refers to the general theft statute, section 18-4-401. See Itin, 17 P.3d at 133 (noting that section 18-4-405 allows an owner of stolen property to pursue a private civil action to recover treble damages, costs, and attorney fees if the taker commits, among other things, theft, and stating that section 18-4-401 defines "theft"). Such a reading is consistent with the plain language of the civil theft statute because "theft" within the meaning of that statute plainly would include the crime of "theft" itself. In Itin, however, we did not have occasion to consider whether the civil theft statute also encompasses other forms of theft (i.e., beyond the crime of "theft" as set forth in section 18-4-401 ), including the crime of "theft of a medical record or medical information" under section 18-4-412(1). That question, however, is squarely presented in this case.
¶23 We begin, as we must, with the language of our civil theft statute. As noted above, that statute provides a civil remedy for an owner whose property another person obtained by "theft, robbery, or burglary." § 18-4-405. Theft, robbery, and burglary are not defined by section 18-4-405. They are, however, all crimes defined by the criminal code. See § 18-4-401 (theft); § 18-4-301, C.R.S. (2020) (robbery); §§ 18-4-202 to - 204, C.R.S. (2020) (burglary). Moreover, the legislature has been specific when it has referred to the crime of "theft," as opposed to other crimes that happen to have the word "theft" in their titles.
¶24 For example, in People v. Rojas , 2019 CO 86M, 450 P.3d 719, this court considered whether the legislature created a crime separate from general theft when it enacted section 26-2-305, C.R.S. (2020), regarding the theft of food stamps. Section 26-2-305(1)(a) provides, in pertinent part:
Any person who obtains ... food stamp [benefits] ... to which the person is not entitled ... by means of a willfully false statement or representation, or by impersonation, or by any other fraudulent device with intent to defeat the purposes of the food stamp program commits the crime of theft, which crime shall be classified in accordance with section 18-4-401(2) ....
(Emphasis added.) We concluded, based on the statute's plain language, that "the legislature didn't create a crime separate from general theft by enacting section 26-2-305(1)(a)." Rojas, ¶ 3, 450 P.3d at 720 ; see also id. at ¶ 16, 450 P.3d at 722 ("[T]he legislature clearly knows how to use the phrase ‘commits a [crime]’ to create a separate crime when it intends to do so. It didn't do that in section 26-2-305(1)(a).").
¶25 Similarly, sections 18-4-401(9) and 13-21-125, C.R.S. (2020), concern theft in the mortgage lending process. There again, the legislature made clear that it was not creating a new crime called "theft in the mortgage lending process." To the contrary, the legislature established the crime within the general theft statute. See § 18-4-401(9) ; see also § 13-21-125 (defining the crime as "a violation of section 18-4-401, C.R.S., in the mortgage lending process").
¶26 In contrast, section 18-4-408, C.R.S. (2020), creates a separate crime of "theft of a trade secret." There, the legislature provided, in pertinent part, "Any person who ... steals or discloses to an unauthorized person a trade secret ... commits theft of a trade secret." § 18-4-408(1) (emphasis added). The legislature additionally included a criminal penalty section within section 18-4-408 that is separate from the penalties set forth by the general theft statute, section 18-4-401. See § 18-4-408(3)(a) (providing that theft of a trade secret is a class 1 misdemeanor and that a second or subsequent offense committed within five years after the date of a prior conviction is a class 5 felony).
¶27 Similarly, section 18-4-701, C.R.S. (2020), creates a separate crime of "theft of cable service," again with its own penalty provision. See § 18-4-701(2), (4).
¶28 And the legislature has proceeded in similar fashion in a number of other settings. See, e.g., § 18-5-902, C.R.S. (2020) (creating a separate crime of "identity theft" and providing for its own criminal penalties); § 35-36-314(2), C.R.S. (2020) (creating a separate crime of "theft of farm products" and incorporating by reference the penalty provisions set forth in section 18-4-401(2) ).
¶29 The foregoing statutes and authorities suggest that when the legislature uses the term "theft," it intends to refer to the crime of theft under section 18-4-401, unless it expressly uses that term in establishing a separate crime. Compare §§ 13-21-125, 18-4-401(9) (defining theft in mortgage lending as a violation of section 18-4-401 ), and § 26-2-305(1)(a) (defining theft of food stamp benefits in terms of the crime of theft under section 18-4-401 ), with § 18-4-408 (creating the crime of theft of trade secrets), § 18-4-701 (creating the crime of theft of cable service), and § 35-36-314(2) (creating the crime of theft of farm products).
¶30 The above-described statutes and authorities further tend to show that crimes involving specific kinds of takings are not automatically subject to a claim for civil theft under section 18-4-405. For example, the legislature explicitly created civil actions for theft of cable service, § 18-4-702, C.R.S. (2020), and for theft of farm products, § 35-36-314(1), suggesting that these crimes do not constitute thefts for purposes of the civil theft statute, section 18-4-405. Specifically, if civil actions were available under section 18-4-405 for these non-general theft crimes, then the legislature would not have needed to create separate civil remedies for any of them.
¶31 In this regard, Satcom Solution & Resources LLC v. Pope, No. 19-cv-02104-CMA-GPG, 2020 WL 4511773 (D. Colo. Apr. 20, 2020), is instructive. In Satcom, the federal district court concluded that the plaintiff lacked standing to pursue a civil theft claim premised on an alleged theft of trade secrets because "[t]he only penalty provision ... contained in [ section 18-4-408, regarding the theft of trade secrets] is criminal." Id. at *11. The court thus concluded that the plaintiff lacked standing to pursue a civil theft claim for theft of trade secrets under section 18-4-405. Id. ; see also Cypress Advisors, Inc. v. Davis, No. 17-cv-01219-MSK-KLM, 2019 WL 7290948, at *4 n.3 (D. Colo. Aug. 28, 2019) (rejecting the plaintiff's contention that its civil theft claim arose under section 18-4-408, regarding the theft of trade secrets, because "the only penalty provision contained in that statute is criminal in nature," and "[i]t does not appear that C.R.S. § 18-4-408 contemplates a private civil right of action akin to that of C.R.S. § 18-4-405"). ¶32 In light of the foregoing authorities, we conclude that section 18-4-405 does not encompass a civil theft claim based on the crime of theft of medical records or medical information. We reach this conclusion for several reasons.
¶33 First, section 18-4-412 creates a separate crime with its own penalty provision:
(1) Any person who, without proper authorization, knowingly obtains a medical record or medical information with the intent to appropriate the medical record or medical information to his own use or to the use of another, who steals or discloses to an unauthorized person a medical record or medical information, or who, without authority, makes or causes to be made a copy of a medical record or medical information commits theft of a medical record or medical information.
....
(3) Theft of a medical record or medical information is a class 6 felony.
(Emphasis added.)
¶34 As noted above, when the legislature intends to create a separate criminal theft offense, distinct from theft under section 18-4-401, it has done so expressly by using language such as "commits theft of a trade secret" in section 18-4-408(1) or "commits theft of cable service" in section 18-4-701(2). See Rojas, ¶ 16, 450 P.3d at 722 ("[T]he legislature clearly knows how to use the phrase 'commits a [crime]' to create a separate crime when it intends to do so."). The legislature's use of "commits theft of a medical record or medical information" in section 18-4-412(1) is likewise indicative of the legislature's intent to create a separate criminal theft offense under that statute. Moreover, nothing in section 18-4-412 refers to the "crime of theft" or to section 18-4-401, the inclusion of which, we have found, indicates a legislative intent to subsume a particular taking within the general theft statute. See Rojas, ¶ 14, 450 P.3d at 722 ("Based on the ordinary meaning of the phrase ‘commits the crime of theft,’ we must assume the legislature meant what it said —when an individual engages in the conduct outlined, he or she commits the crime of theft."). And the inclusion within section 18-4-412 of its own criminal penalty provision, absent any language authorizing a private right of action, further supports our conclusion. See Satcom, 2020 WL 4511773, at *11.
¶35 Accordingly, the theft of medical records statute is more akin to the statutes criminalizing theft of trade secrets and theft of cable services, neither of which supports a civil theft claim under section 18-4-405. See Satcom, 2020 WL 4511773, at *11 ; Cypress Advisors, 2019 WL 7290948, at *4 n.3 ; § 18-4-702.
¶36 Second, to conclude, as Vail Clinic asserts, that "theft" within the meaning of the civil theft statute encompasses any and all forms of theft would render section 18-4-702 —and any of the other statutes authorizing civil actions for a particular taking—arguably superfluous (or at least inconsistent with the principle that Vail Clinic asks us to adopt). We, however, may not adopt a construction that renders any words or phrases of a statute superfluous or that creates conflicts among provisions within a statutory scheme. See Agilent Techs., ¶ 16, 441 P.3d at 1016. This is particularly true here, where, as noted above, Vail Clinic contends that sections 18-4-405 and 18-4-412 require the person asserting the claim or violation to establish contradictory elements, particularly as to the actor's mental state.
¶37 Third, we deem it pertinent that the crime of theft of medical records was created long after the civil theft statute was enacted, and Vail Clinic has cited no applicable authority to indicate that the legislature contemplated that the new statute would support a civil theft claim. See Ch. 168, sec. 6, § 18-4-412, 1979 Colo. Sess. Laws, 726, 727-28 (establishing the crime of theft of medical records or medical information); An Act Concerning Criminal Jurisprudence, sec. 58, 1861 Organic Act of the Territory of Colo. 290, 300 (establishing a civil action for "larceny, robbery or burglary").
¶38 For these reasons, the plain language of sections 18-4-405 and 18-4-412 leads us to conclude that no civil claim exists for the theft of medical records or medical information under section 18-4-412.
¶39 In making this determination, we are not convinced by Vail Clinic's suggestion that the definition of a "thing of value" under section 18-1-901(3)(r), C.R.S. (2020), compels us to conclude that the theft of medical records or medical information is encompassed within section 18-4-401 and therefore may support a civil theft claim.
¶40 We acknowledge that section 18-1-901(3)(r) defines "[t]hing of value," for purposes of our criminal code, to include, among other things, "tangible and intangible personal property, ... services, confidential information, medical records information, and any rights of use or enjoyment connected therewith." The fact that the crime of theft under section 18-4-401 involves the taking of a "thing of value," however, does not persuade us that the theft of medical records or medical information is necessarily included within "theft" under section 18-4-401. If it was, then section 18-4-412 would be superfluous. Moreover, we note that the definition of "thing of value" also encompasses intangible property like trade secrets and services like cable service, but as noted above, the theft of such "things" does not support a civil theft claim under section 18-4-405. And we note that section 18-1-901(1) itself makes clear that the definitions contained therein apply unless the context indicates otherwise. To the extent that Vail Clinic argues that the definition of "thing of value" suggests that the theft of medical records or medical information must support a civil theft claim, we conclude that the context here indicates otherwise.
¶41 For all of these reasons, we conclude that the term "theft," as that term is used in section 18-4-405, does not encompass the theft of medical records or medical information under section 18-4-412(1) but instead refers solely to "theft" within the meaning of section 18-4-401.
III. Conclusion
¶42 In light of the foregoing, we conclude that Vail Clinic does not have standing to bring a civil theft claim based on a violation of the theft of medical records statute, section 18-4-412.
¶43 We therefore make the rule to show cause absolute, and we need not address whether Vail Clinic's civil theft claim is also barred by section 18-4-412(5).